[Civ. No. 18359. Fourth Dist., Div. One. June 2, 1980.]

In re the Marriage of RUTH LEE and
MORTIMER EDWARD HOUSE.
RUTH LEE HOUSE, Respondent, v.
MORTIMER EDWARD HOUSE, Appellant.

COUNSEL

Sankary & Sankary and Morris Sankary for Appellant.

Harrington, Waddell & Briggs and Thomas R. Waddell for Respondent.

OPINION

**WIENER, J.**—Mortiner Edward House appeals the interlocutory judgment dissolving his six-and-one-half year marriage to Ruth Lee House. He challenges both the amount and term of spousal support and ques-

tions the division of community property. We conclude the court did not abuse its discretion on the issue of spousal support and the property division is supported by substantial evidence. We affirm the judgment.

*Spousal Support*

At the time of trial Ruth was 57 years old and unemployed. The court awarded her $300 per month to be reduced by $1 for every $2 earned by her over $250 per month. She was ordered to furnish an accounting of her earnings to her former husband every 90 days and copies of her W-2 forms each year. The order did not provide for a termination date.

■ "Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage." (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].) Factors which must be considered in determining the amount and duration of spousal support include: (1) duration of the marriage, (2) the value of community property after division available for support, (3) the party's accustomed standard of living, and (4) the ability of the supported spouse to engage in gainful employment with appropriate regard to the health and aid to the supported spouse. (*Id.*, at pp. 454-455; Civ. Code, § 4801, subd. (a).)

Here Mortimer had net monthly income of approximately $1,000. His wife was untrained having only worked as a waitress before their marriage. In light of her reasonable and necessary monthly expenses the amount of spousal support was well within the court's discretion.

On a number of occasions trial courts have been cautioned not to burn their bridges by failing to retain jurisdiction over spousal support. (See e.g. *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 285 [110 Cal.Rptr. 619].) Before jurisdiction can properly be relinquished the record must contain evidence that the supported spouse truly has the ability to meet his or her future needs. (*In re Marriage of Morrison, supra*, at p. 453.) Obviously, the court had this admonition in mind when it ordered the wife to account every 90 days to assure Mortimer was informed of her income so that he might take the necessary legal steps to modify spousal support when the circumstances warranted such action. ■ Although courts more frequently provide for a termination date when the marriage is only six and one-half years, the failure to do so here is not reversible error particularly where the provisions of

the judgment allow the obligated spouse sufficient protection both as to reduction of the amount and termination. We hold there was no abuse of discretion either as to the amount or term of spousal support.

*Division of Property*

*Keough Plan*

Husband claims the inclusion of his pension plan in the interlocutory judgment was error because the trial judge did not mention that specific asset in his oral intended decision which he announced at the conclusion of trial. After our review of the record we marvel at the court's ability to have made "order out of the chaos" from this four-day trial. Husband does not point to any evidence to support his objection. His Keough plan is community property and as such was properly divided.

*The Business*

Husband claims the business known as Precision Tool & Die, Inc. was his separate property because he started it before he was married. (Civ. Code, § 5108.) He is technically correct. Approximately one month before the parties married Ruth gave him $1,500 as the down payment to go into business for himself which he has since paid back. Husband overlooks, however, the four years of his efforts, energies and skills that were used to increase the value of the business, all of which occurred during his marriage. He also minimizes Ruth's assistance. He now says "[h]is wife did not help him in the business *except* to clean out the washrooms, make deliveries and bank money and partially keep the books." (Our italics.)

■ Our courts have recognized for a long time that income arising from a spouse's efforts and industry is community property, and the community must receive a fair share of the property so acquired. (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 17 [98 Cal.Rptr. 137, 490 P.2d 257].) "'The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence . . . .'" (*Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 915 [67 Cal.Rptr. 128].)

The court's statement that "the evidence is clear enough that this was a joint undertaking on their part" and that "[t]hey got together and agreed they were going to put their operation into a business" is amply

supported by the evidence. Ruth testified she gave him money "to go into *our* business." She worked in the shop with him in the morning before she went to her regular job in the afternoon. She operated equipment in the business until hospitalized for major surgery. All in all, this is hardly a case where the husband's separate property has increased in value solely because of his capital and the community has received full benefit of his efforts through his salary. (See generally *Pereira* v. *Pereira* (1909) 156 Cal. 1 [103 P. 488]; *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17 [199 P. 885].) The determination that Precision Tool & Die, Inc. was a community asset is proper.

In April 1974, husband received a 49 percent stock interest in Terry Craft Enterprises, Inc. (Terry Craft) for his interest in Precision Tool & Die, Inc. At trial, the Terry Craft stock was awarded to him at a value of $40,000. He was ordered to pay his wife $20,000 payable $200 per month with interest at 6 percent per annum, provided, however, that if the business were to be sold or otherwise transferred the entire unpaid balance would become due and payable.

Husband contends the court erred in not dividing the stock in kind, and, in any event, the valuation was wrong. Wife also argues the valuation is in error—it is too low, and the case should be reversed for a new trial on this issue.

The method of valuing this asset by the trial judge was simple and sensible. He looked at what the parties themselves agreed in the sale of Precision Tool & Die, Inc. to Terry Craft. Initially, the sale of assets was for $60,000, $10,000 cash down and a $50,000 note payable over 30 years at 7 percent interest. Thereafter, on the advice of husband's accountant, the note was reduced to $28,000 which was then exchanged for the 49 percent stock interest. In reaching the $40,000 value the court accepted the figures placed on the value of the business after deducting $10,000 representing the value of husband's continued presence there. Although the court labeled this $10,000 figure as "good will," it more accurately represented the court's view of the present economic value of husband's future work which was properly deductible from the $50,000. ■ Under these circumstances where there are no written findings with the court having the opportunity to review the written appraisals of the business, two of which were for approximately $20,000 and a third for $60,000, as well as the ability to determine the respective credibility of the witnesses who testified on this issue, its finding of $40,000 is supported by the record.

A court is not compelled under Civil Code section 4800 to divide shares of common stock in kind. In *In re Marriage of Fink* (1979) 25 Cal.3d 877 at page 885-886 [160 Cal.Rptr. 516, 603 P.2d 881], our high court once again rejected this assertion and stated that "'section 4800 was intended to, and does, vest in the court considerable discretion in the division of community property in order to assure that an equitable settlement is reached' ([*In re Marriage of Connolly* (1979) 23 Cal. 3d 590 at p. 603 (153 Cal.Rptr. 423, 591 P.2d 911)])."

In the present case, the court exercised sound discretion in dividing the community property by the asset distribution method to achieve a practical as well as equal division. Husband's remaining contentions that there is no evidentiary support for the findings that certain cash and stock are the wife's separate property are without merit.

*Disposition*

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.