[Civ. No. 22443. Fourth Dist., Div. One. Oct. 20, 1980.]

Estate of ROBERT NEIL EDGETT, Deceased.
KENNETH CORY, as State Controller, Petitioner and Respondent, v.
ELIZABETH CATHERINE EDGETT, Objector and Appellant.

COUNSEL

Karl H. Griesbaum for Objector and Appellant.

Myron Siedorf, Margaret Groscup and Richard J. Barnet for Petitioner and Respondent.

OPINION

**COLOGNE, J., Acting P. J.**—Elizabeth Catherine Edgett appeals an "Order Overruling Objections to Report of Inheritance Tax Referee."[1] The facts are not in dispute. Elizabeth married the decedent Robert

---

[1]We treat this order, otherwise nonappealable, as an appealable order fixing an inheritance tax (Prob. Code, § 1240; see *Estate of Johnston* (1970) 12 Cal.App.3d 855, 858 [91 Cal.Rptr. 116]).

Neil Edgett on August 5, 1939, and obtained a final judgment of dissolution of the marriage in April 1972. The decedent Robert then married an unrelated third party and obtained a final judgment of dissolution from her in June 1973. In July 1976, Elizabeth and Robert began cohabitating again as husband and wife but never remarried. Elizabeth said in the eyes of God she was always married and, while she knew there was not a legal marriage in effect, that was nobody's business. They did, however, hold themselves out to friends and neighbors as husband and wife, shared a condominium and jointly paid their bills.

In September 1976, Robert executed a will which not only recited the fact he was unmarried but referred to Elizabeth as his "former wife."[2] That will left the entire estate to her. For tax purposes, the inheritance tax referee treated her as a class C transferee (unrelated person; Rev. & Tax. Code, § 13309)[3] rather than as a class A transferee (wife; § 13307), and fixed the inheritance tax accordingly. ■ Elizabeth contends she was entitled to treatment as a class A transferee because she enjoyed a spousal-like relationship with Robert.

California does not accept the doctrine of common law marriage abolished in California by statute in 1895 (see *Norman v. Thomson* (1898) 121 Cal. 620, 628 [52 P. 1077]; *Estate of Abate* (1958) 166 Cal.App.2d 282, 292 [333 P.2d 200]). While the courts have been willing to grant certain relief to a man or woman living in an unmarried state by enforcing an agreement between them and providing equitable relief, they have consistently refused to equate the nonmarital relationship to a lawful marriage (see *Marvin v. Marvin* (1976) 18 Cal.3d 660,

---

[2]Elizabeth's brief tells us reciprocal wills were executed by the parties at that time.

[3]Unless otherwise stated, all references are to the Revenue and Taxation Code. The relevant sections are as follows:

Section 13307. "'Class A transferee' means any of the following:

"(a)   A transferee who is the husband, wife, lineal ancestor, or lineal issue of the decedent.

"(b)   A transferee to whom the decedent for not less than 10 continuous years prior to the transfer stood in the mutually acknowledged relationship of a parent, if the relationship commenced on or before the transferee's 15th birthday.

"(c)   A transferee who is the lineal issue of a child mentioned in subdivision (b)."

Section 13308. "'Class B transferee' means any of the following:

"(a)   A transferee who is the brother, sister, or descendant of a brother or sister of the decedent.

"(b)   A transferee who is the wife or widow of a son, or the husband or widower of a daughter, of the decedent."

Section 13309. "'Class C transferee' means any transferee who is not a class A or B transferee."

683-684 [134 Cal.Rptr. 815, 557 P.2d 106]). The Family Law Act which divides the community property of the husband and wife and provides spousal support does not apply to a nonmarital relationship (*id.*, at p. 665). Similarly, the marital communication privilege is extended only to persons who have a valid marriage (*People* v. *Delph* (1979) 94 Cal. App.3d 411, 415 [156 Cal.Rptr. 422]). The efforts of the Legislature to protect marital status were clearly written and have been held to apply only to a legal marriage. For us to do otherwise would be to disregard totally legislative intent to grant certain rights and privileges to persons who sought and obtained that special status (see *People* v. *Delph, supra*, at p. 416, fn. 3). Contrary to the urging of Elizabeth, we cannot analogize this to a putative marriage where there must be a good faith belief a valid marriage exists (see Civ. Code, § 4452; *Vallera* v. *Vallera* (1943) 21 Cal.2d 681 [134 P.2d 761]), nor do we see an analogy to the equitably adopted child doctrine where a different family setting pertains and the parent-child relationship imposes more formal requirements for legalizing the status (see *Estate of Reid* (1978) 80 Cal.App. 3d 185 [145 Cal.Rptr. 451]). Here, Elizabeth does not found her claim on the existence of any contract or agreement as contemplated in *Marvin* v. *Marvin, supra*, 18 Cal.3d 660. Instead, her claim is based solely on the parties' holding out as husband and wife. The facts show the parties had no desire to obtain a valid marriage and were fully aware of its nonexistence; they were content to maintain an unsolemnized relationship and the survivor cannot now complain she failed to receive benefits the Legislature intended for married persons.

Judgment affirmed.

Work, J., and Butler, J.,* concurred.

A petition for a rehearing was denied November 5, 1980, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.