[No. G001252. Fourth Dist., Div. Three. Apr. 22, 1986.]

In re the Marriage of KATHERINE and DANIEL BUKATY.
KATHERINE BUKATY, Appellant, v.
DANIEL BUKATY, Respondent.

144

COUNSEL

Schwamb, Stabile & Des Jardins and Costas A. Ladikos for Appellant.

No appearance for Respondent.

OPINION

**SONENSHINE, J.**—May an award of spousal support pursuant to Civil Code section 4801, subdivision (a),[1] be based on the parties' prior cohabitation? No.

Husband and wife were married in 1942 and divorced in 1954. Soon afterward they again began living together and had an on-again off-again relationship[2] until May 6, 1981, when they remarried. Unfortunately, their union was no better the second time around. Just one year and seven months later, on December 1, 1982, they again separated.

Trial was held in January 1984. At that time wife was 64 years old and had been unemployed for 4 years. She had previously worked as an apart-

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] We are not informed as to how much of the time was "on" and how much "off." Nor are we privy to the circumstances surrounding the 1954 divorce.

ment manager but her prospects due to her age and physical disability[3] were bleak at best.

Wife's assets were minimal, consisting of only about $20,000 in savings. Her net monthly income (which included a disability pension of $97, social security of $297, and $75 in interest) totalled $394, and her expenses were $1,135. In contrast, husband possessed trust deeds in excess of $200,000. He had net monthly income of $3,302 and monthly expenses of $2,225.[4]

At trial wife's counsel attempted to introduce evidence of the parties' prior marriage and nonmarital relationship. He argued it was "relevant toward the duration of the marriage." The court sustained husband's objection, finding wife had not pleaded a *Marvin*-type action[5] and noting California does not recognize common law marriages. The trial judge also commented he was without jurisdiction under section 4801 to hear this evidence.

But wife's lawyer said he was not attempting to prove a *Marvin* contract. Rather, and despite the court's admonitions he designate *some* legal theory upon which an award of unlimited duration could be based, counsel persisted in trying to convince the court to do so simply because of the uniqueness of the relationship. Finally, he declared he was "going to allege detrimental reliance."[6] However, as noted by both the court and husband's

---

[3]At the time of trial wife was under a doctor's care. She had become disabled while working for the state as a switchboard operator. The record does not disclose the precise nature of the disability. However, she testified she "can't stand at the kitchen sink any length of time. . . . It is my back. I have to stop. And the only way I can be able to stop aching is I have to lie down until the pressure, or whatever it is that is doing it, and then after a while I can get up and start over again. But I can't stand or do anything too long at a time. Even driving my car, I can't drive too long a distance."

[4]The parties stipulated to the $394 and $3,302 amounts. Wife's financial declaration disclosed $1,135 in expenses; husband's original declaration indicated $1,425 for his needs but at the time of trial it was amended to include $800 for a newly acquired mortgage obligation.

[5]*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].

[6]The following colloquy took place:

"MR. LADIKOS: This is not just a short-term marriage of two people meeting and marrying and then separating.

"THE COURT: We have been over that several times. I want you to give me a specific theory that you are going on, if you can.

"MR. LADIKOS: May I back up a little bit and just try once again, because I feel that this factor, among other things, is important in the presentation—

"THE COURT: Counsel, you said this several times now. I want to get down to a specific theory, if you have one. If you don't have one, you don't have one.

"MR. LADIKOS: Detrimental reliance.

"THE COURT: Have you set that forth in the pleadings at all?

"MR. LADIKOS: . . . . I'm going to allege detrimental reliance. I'm trying to show the court that [wife] engaged in a long-term relationship with [husband], they entered into a second marriage which culminated after [husband] provided support to [wife] without even having a marriage. He provided monetary support. His conduct is highly relevant toward

counsel, wife had failed to plead that theory, or any other one. At the conclusion of argument, the court ruled "there is nothing in the pleadings that would indicate any reason to go beyond the Family Law Act matters that are set forth in the petition."

Husband was ordered to pay spousal support "in the sum of $400.00 per month for a period of three (3) years, commencing February 1, 1984 and terminating with the payment due on the 1st of January, 1987, at which time jurisdiction shall be terminated." This appeal followed.

■ Husband has not filed a respondent's brief, but this "does not require an automatic reversal . . . . We think the better rule is to examine the record and reverse only if prejudicial error is found." (*In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [192 Cal.Rptr. 212].)

I.

■ Section 4801, subdivision (a), sets forth guidelines a trial court *must* consider in fixing the amount and duration of spousal support and in setting a date, if any, on which jurisdiction is to terminate. They include: the earning capacity of each spouse; their respective needs; the obligations and assets of each; the duration of the marriage; the time required for the supported spouse to acquire appropriate education, training and employment; the ability of the supported spouse to engage in gainful employment; the age and health of the parties; their standard of living; and "any other factors which [the court] deems just and equitable."

The court's determination is discretionary and will not be reversed absent an abuse. (*In re Marriage of Paul* (1985) 173 Cal.App.3d 913, 917 [219 Cal.Rptr. 318].) ■ "[A]n abuse of discretion occurs when, after calm and careful reflection upon the entire matter, it can be fairly said that no judge would reasonably make the same order under the same circumstances." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].)

■ Wife contends the court in making its limited support award abused its discretion in refusing to consider, as a "just and equitable" factor, the

showing that [he] just didn't all of a sudden . . . say, 'I'm not going to provide any support, I'm not going to assist [wife.]" [¶] Over that long-term period of time a relationship grew out of it that ended up in a second marriage that admittedly was only short-term, but they are saying that the second marriage was only a short marriage, and she is only entitled to two months more support, and that is where we have to try to use whatever factors I have in rebutting that.

"THE COURT: Are you trying to say that on the basis of a long-term relationship prior to marriage that the court should award spousal support? Is that what you are trying to say?

"MR. LADIKOS: Exactly."

distinctive nature of the parties' 40-year relationship. She acknowledges the brevity of the marriage; however, she claims it should have been viewed as a lengthy one.

The court was correct. "The Family Law Act which divides the community property of the husband and wife and provides spousal support does not apply to a nonmarital relationship . . . ." (*Estate of Edgett* (1980) 111 Cal.App.3d 230, 233 [168 Cal.Rptr. 686], citing *Marvin* v. *Marvin, supra,* 18 Cal.3d 660, 665; see also § 4351.)[7] Any right to support attributable to the period of the parties' cohabitation would be a *Marvin* right[8] and could be asserted only in a separate civil action, not in a proceeding under the Family Law Act. (See *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836, 843 [173 Cal.Rptr. 680]; Cal. Rules of Court, rule 1212.)[9]

 Nor is there any merit to wife's contention the court erred in terminating support because there was no evidence she would be self-supporting at the conclusion of the three-year period. Generally, support cannot be terminated after a *lengthy* marriage unless the record indicates the supported spouse will be able to adequately meet his or her needs. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41].) However, we reject the notion this proscription is applicable to *all* marriages, regardless of length.

True, a trial judge need not, on the basis of duration alone, automatically terminate jurisdiction after a relatively short marriage. (See, e.g., *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 459 [152 Cal.Rptr. 668], disapproved on other grounds in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285]; *In re Marriage of House* (1980) 106 Cal.App.3d 434, 437-438 [165 Cal.Rptr. 145].) But there is no authority for wife's proposition the court *must* retain jurisdiction, even in a short marriage, in the absence of evidence the supported spouse will be self-supporting on the date selected for termination. Indeed, in *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248], the California Supreme Court reiterated *Morrison's* applicability to *lengthy* marriages. After suggesting a marriage of 11 years is of sufficient length to

---

[7]Section 4351 provides, in pertinent part: "In proceedings under this part [part 5 of the Civil Code], the superior court has jurisdiction to inquire into and render any judgment and make such orders as are appropriate concerning . . . the support of either party . . . ." Section 4000 designates part 5 as "The Family Law Act."

[8]See footnote 11, *infra.*

[9]Pursuant to rule 1212, "[n]either party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules or the Family Law Act."

invoke the rule of *Morrison,* the *Vomacka* court noted "[*t*]*his factor* precluded an absolute termination of support *without* a determination that [the wife] could adequately meet her financial needs." (*Id.,* at p. 468; italics added.) If a determination of "lengthy" marriage were no longer relevant to the issue of reservation of jurisdiction, the court's remark would have been unnecessary. And while the number of years required to categorize a marriage as "lengthy" is not absolute,[10] there is no question *this* marriage does not qualify.

Nonetheless, wife attempts to analogize the relationship to a lengthy marriage. She argues retention of jurisdiction is based on the fact "the two people lived as husband and wife together during a long term marriage and therefore a long term relationship, wherein both parties seek out support and depend upon each other's ability to maintain their lives. This is the same fact situation which was before the trial court, in that both parties had lived together for a long period of time as husband and wife, had held each other out as husband and wife and the wife had become dependent upon the husband's support and providing of medical benefits."

But the analogy is misplaced. "The efforts of the Legislature to protect marital status were clearly written and have been held to apply only to a legal marriage. For us to do otherwise would be to disregard totally legislative intent to grant certain rights and privileges to persons who sought and obtained that special status . . . ." (*Estate of Edgett, supra,* 111 Cal.App.3d 230, 233.)

In terminating jurisdiction after three years, the trial court was influenced by the brevity of the marriage. Its conclusion is understandable. True, the length of the marriage is only *one* factor to be considered in making a support award. (*In re Marriage of Neal, supra,* 92 Cal.App.3d 834, 846.) But it is a substantial one. It is indicative of the very essence of the union. Under the circumstances presented, we cannot say the decision constituted an abuse.

Our conclusion may seem harsh. Indeed, we understand the apparent paradox wife faces. But any right she may have to spousal support which is based on factors outside the Family Law Act, cannot be asserted in this

---

[10]For example, in *In re Marriage of Neal* (1979) 92 Cal.App.3d 834 [155 Cal.Rptr. 157], a marriage of nine years was deemed lengthy. And in *In re Marriage of House, supra,* 106 Cal.App.3d 434, the court held the trial court's failure to provide for a termination date in a six and one-half year marriage, was not an abuse of discretion.

dissolution action.[11] Rather, such claim must be asserted in a separate action which then, of course, can be consolidated with the dissolution. (*Watkins v. Watkins* (1983) 143 Cal.App.3d 651, 653 [192 Cal.Rptr. 54].) And this wife has failed to do.

## II.

■ Wife also contends the court abused its discretion in that the amount of the award is grossly inadequate vis-à-vis her needs and husband's ability to pay. She argues, while she needs $341 more each month just to survive, husband has an excess of $677 per month after expenses, including payment of the support obligation.

For a six-month period terminating shortly before trial, wife received $500 per month as court-ordered pendente lite support. At trial husband took the position she should receive that same amount but for an additional three months only. The court, reluctant to implement husband's proposal, concluded the sum of $400 for a period of three years was reasonable. We find no abuse.

In making a support award, evidence of a spouse's needs and the other spouse's ability to meet those needs, is not to be viewed in a vacuum. *All* of the circumstances enumerated in section 4801, subdivision (a), must be considered, *including* the duration of the marriage. Here, while the length of the union no doubt carried weight, there is nothing in the record indicating the court based its order *solely* on this factor. We therefore heed "the well admonished rule of appellate review which finds a presumption that the court performed its duties in a regular and correct manner absent a clear showing to the contrary." (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 424 [190 Cal.Rptr. 885].) "[T]he fact that a more liberal award might have been supported is not a proper test. [Citation.]" (*In re Marriage of Mason* (1979) 93 Cal.App.3d 215, 221 [155 Cal.Rptr. 350].)

## III.

We are not unsympathetic to wife's position. The record reflects she was presently unemployable and her future prospects were equally dim. Her

---

[11]The *Marvin* court left open the question "whether, in the absence of an express or implied contractual obligation, a party to a nonmarital relationship is entitled to support payments from the other party after the relationship terminates." (*Marvin* v. *Marvin, supra,* 18 Cal.3d 660, 685, fn. 26.) The court also noted its "opinion does not preclude the evolution of additional equitable remedies to protect the expectations of the parties to a nonmarital relationship in cases in which existing remedies prove inadequate; the suitability of such remedies may be determined in later cases in light of the factual setting in which they arise." (*Id.,* at p. 684, fn. 25.)
We need not pass on these issues at this time because they are not before us.

assets were meager and due to her age and health, the situation was not likely to improve.

However, "[w]hile the courts have been willing to grant certain relief to a man or woman living in an unmarried state by enforcing an agreement between them and providing equitable relief, they have consistently refused to equate the nonmarital relationship to a lawful marriage . . . ." (*Estate of Edgett, supra,* 111 Cal.App.3d 230, 232.) Indeed, this is precisely what wife is trying to do.

Had the parties not remarried and instead continued to cohabit, wife's only claim for support would have been founded on the existence of a *Marvin* contract. The fact they *did* remarry does not alter this reality; it only entitled wife to receive spousal support under the Family Law Act for *that* marriage. The challenged award accomplished this statutory objective. And while we might not necessarily have rendered a similar order, we cannot say no other judge would have done so under the same circumstances.

The judgment is affirmed.

Trotter, P. J., and Wallin, J., concurred.