[No. D011242. Fourth Dist., Div. One. Sept. 30, 1991.]

In re the Marriage of MARILYN and FORREST HEISTERMANN.
MARILYN HEISTERMANN, Appellant, v.
FORREST HEISTERMANN, Respondent.

## COUNSEL

Roy B. Garrett and James Hennenhoeffer for Appellant.

Wayne Alan Hughes for Respondent.

## OPINION

**WORK, J.**—Marilyn Heistermann appeals an order modifying that portion of a judgment of dissolution which had awarded spousal support following her eight-year, eleven-month marriage to Forrest Heistermann. We reverse because the modifying court identified no change of circumstances to support its order setting a termination date for actual support and terminating jurisdiction. We conclude the court inappropriately justified its order upon its perception there is a judicial policy favoring shifting the support obligation for permanently disabled ex-spouses of "borderline" lengthy marriages to society.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 1984, after a marriage of eight years, eleven months,[1] Marilyn, age 54, and Forrest, age 58, dissolved their marriage. Based on a finding Forrest's gross income was $4,127 per month, the court ordered Forrest to pay spousal support payments commencing February 1, 1984, in the amount of $1,350 per month, until Marilyn "remarries, either party dies, or until further order of the court, whichever occurs first."

In July 1987, Forrest moved to modify spousal support alleging changed circumstances. Specifically, he alleged the original spousal support order

---

[1] They married in July 1973 and separated in June 1982.

was premised on findings Marilyn was undergoing psychological therapy, she was not working and had no employable skills, and she had not worked during the marriage at Forrest's request. He alleged changed circumstances in that Marilyn was now cohabitating with a man, she was working as a secretary for her attorney son, she was no longer undergoing psychological therapy, and he (Forrest) had remarried and incurred additional expenses. Forrest alleged he had been paying support since November 1982, and Marilyn was cohabitating and working and capable of supporting herself. Forrest listed his gross monthly income as $6,000 per month, his new wife's gross monthly income as $2,963, and their monthly expenses as $4,300.

Marilyn, 58 years old at the time of the 1988 modification hearing, stated she had been unemployed for 14 to 15 years, and continued to be emotionally, psychologically, and physically disabled with arthritis and degeneration of her spinal column.

After a hearing, the trial court issued a written statement of decision (Code Civ. Proc., § 632) finding that although Forrest had carried his burden to show cohabitation (Civ. Code,[2] § 4801.5)[3] and limited employment,[4] both had terminated at or about the time Forrest filed his modification motion and neither factor was determinative of the support modification issue. On substantial evidence it found Marilyn was presently disabled, and although the evidence was in conflict as to the degree of her physical disability, she unquestionably had a present need for support and Forrest had the ability to provide a reasonable amount for that purpose. The court considered the assets and obligations of each party, and considered that the marriage was not lengthy, although it bordered on lengthy. The age of the parties was not such that the court could expect their income to increase. The question presented in the court's view was whether Forrest should have a continued obligation to meet Marilyn's need for support. The court noted Forrest had offered to provide a "work-hardening" program for Marilyn[5] and concluded "the parties had reached a time where . . . the evidence supports a decision

[2] All statutory references are to the Civil Code unless otherwise specified.

[3] Section 4801.5, subdivision (a) states in pertinent part: "Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex."

[4] In its oral comments at the hearing, the court noted Marilyn's ability to engage in gainful employment was largely unanswered, but it was partially answered by virtue of her conduct doing clerical work for her son; although she did not work for money and the work was of limited duration, it demonstrated she had a capacity to perform some tasks. Further, the court noted the psychological testimony indicated Marilyn needed therapy and probably medication before she could be employed.

[5] A work-hardening program seeks to build an individual's tolerance to carry out work activities, including their mental abilities and physical skills.

that would suggest the burden of support should shift from Respondent to society."

In its oral comments at the hearing on November 29, 1988, the court also noted this was Marilyn's fourth marriage and there were adult children. Further, the court stated, "in marriages of this duration, the court must examine the continued obligation on the part of the respondent. I have done so and I find he has met his burden. That is not based upon the time alone. It's not based upon income alone. It's based upon a recognition that in their lives, under their circumstances, [Forrest] has acted responsibly." The court emphasized this "is a case in which support has been paid for approximately seven and a half years or thereabouts[6]; that the parties have reached a point in time where it's this court's opinion that the evidence supports a decision which would suggest that the burden of support should shift and it should shift to society."

The court ordered that Forrest pay for a work-hardening program; spousal support was to continue until November 29, 1989, subject to the court's continuing jurisdiction to act upon any motions brought; and jurisdiction as to spousal support was to cease on November 29, 1989, unless prior to that date Marilyn showed good cause for extending the jurisdiction.

## ANALYSIS

Marilyn argues the trial court abused its discretion in setting a specific date to terminate support, asserting the evidence did not support a finding that at age 59, with disabling arthritis and emotional problems, she would be able to support herself at that time. She points out there was no evidence anyone except a hypothetical willing family member could see fit to hire her, and no evidence of what income might be derived from employment she might be able to obtain.

Forrest responds that the issue is not whether Marilyn can, or will be able to, support herself, but rather whether society should now relieve him of the obligation to contribute to her support. He contends the court correctly relied on language in *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913 [247 Cal.Rptr. 522], for the proposition that Marilyn's support should now be society's obligation. Alternatively, he argues the trial court did consider the factors delineated in section 4801 (in which the supported spouse's need for

---

[6]The 1984 spousal support order states payments were to commence from February 1, 1984. Forrest alleged he had been making payments since November 1982, an assertion which Marilyn apparently does not dispute. If so, Forrest would have paid support for a total of seven years, from November 1982 to the November 1989 date chosen by the court to end support and terminate jurisdiction.

support is only one of several),[7] and properly ordered termination of support and jurisdiction after one more year unless Marilyn could carry the burden of establishing changed circumstances.

A.

 The record shows the trial court's decision to terminate support was not based on any finding of changed circumstances since the original decree, but was predicated on its policy conclusion that no spouse of a dissolved medium-length marriage should be required to indefinitely support a disabled ex-spouse. That is, the trial court assumed that after passage of a reasonable time spousal support for a disabled ex-spouse should be cut off irrespective of whether there has been a change of circumstances, and that needed future support should be borne by available social welfare programs or by other third party sources. As we shall explain, *In re Marriage of Wilson* does not stand for such a broad proposition. Instead, on significantly different facts, the court upheld terminating support where the parties' stipulation to a termination date had been incorporated into the judgment of dissolution, and after the trial court had carefully balanced the particular equities in that case.

In *In re Marriage of Wilson*, the parties had been married for five years and ten months, and spousal support had been paid for four years and ten months. The supported spouse, who became disabled during the marriage, had entered the marriage when she was in her 40's and was working as a bartender. The parties had stipulated to a two-year spousal support term, and thereafter the disabled spouse was able to obtain court rulings extending the support, until the termination after four years and ten months. (*In re Marriage of Wilson, supra,* 201 Cal.App.3d at pp. 915, 919.) In that case, the trial court had weighed the factors delineated in section 4801 before exercising its discretion to terminate support. The court delineated the reasons why the supporting spouse should no longer support the disabled spouse—i.e., the disabled's spouse's earning capacity was not impaired by periods of unemployment incurred to permit her to attend to domestic duties, the parties were in their 40's when they married and had already established their lives, there were no children from the marriage, and the disabled spouse had not contributed to the attainment of the supporting spouse's career. *In re Marriage of Wilson* concludes, "the court balanced the equities and decided under

---

[7]Section 4801 provides that in making a spousal support award, the court should consider the earning capacity of each spouse, including impairment of such capacity from devotion to domestic duties; contribution to the other spouse's career; ability to pay; needs of each party; obligations and assets; duration of the marriage; the interests of dependent children; age and health; tax consequences; and any other equitable factors.

these circumstances the obligation to assist [the disabled spouse] should shift from [the supporting spouse] to society." (*Id.* at p. 918.)

### B.

█ When a trial court makes an original determination on the issue of spousal support for a very short marriage, it may balance the section 4801 factors and exercise its discretion to set a termination date, even absent a showing the supported spouse will be self-supporting on that date. (*In re Marriage of Bukaty* (1986) 180 Cal.App.3d 143, 148 [225 Cal.Rptr. 492].)[8] Or, even after a lengthy marriage, the trial court in the original support order may balance the section 4801 factors and set a termination date for spousal support based on evidence the spouse will be self-supporting by that date, but it must retain jurisdiction to allow for the possibility of continued support. (*In re Marriage of Pekar* (1985) 173 Cal.App.3d 367, 371-372 [218 Cal.Rptr. 823]; *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 748 [189 Cal.Rptr. 622]; see also *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 666 [235 Cal.Rptr. 587].) An order setting a termination date but retaining jurisdiction puts the supported spouse on notice that he or she is expected to become self-supporting, and shifts the burden to the supported spouse at a modification proceeding to show the changed circumstance of a continued need for support notwithstanding good faith efforts to become self-supporting. (*In re Marriage of Pekar, supra,* 173 Cal.App.3d at pp. 371-372; see also *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352, 356 [164 Cal.Rptr. 381][9] ; *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 666; *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 710 [250 Cal.Rptr. 148].)

█ In contrast to the situation in *Wilson,* where the original support order contained a termination date and there were no unforeseen later events, here there is no express termination date contemplated by the original support order. Thus, in this case a modification order setting a termination date requires the supporting spouse to carry his/her burden of showing a change in circumstances which justifies termination. (See *In re Marriage of*

---

[8]In contrast, after a lengthy marriage, when factors such as age and poor health may inhibit a supported spouse's ability to become self-supporting notwithstanding good faith efforts, it is an abuse of discretion to terminate support and jurisdiction unless the evidence shows the spouse can be self-supporting. (*In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 285 [110 Cal.Rptr. 619]; *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41].)

[9]This type of order setting a termination date, but reserving jurisdiction to modify, has become known as a "Richmond" order. (See *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 665.) The court here in its oral comments stated it was rendering a "quasi-Richmond" order.

*Gavron, supra,* 203 Cal.App.3d at p. 710; *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 657.)

Although the marriage was less than 10 years and thus not a presumptively long marriage,[10] apparently the trial court rendering the original support order found this was not a case warranting a specific date to terminate support and its jurisdiction so as to put Marilyn on notice she was expected to try to reenter the job market. ▪▪▪ A court is required to retain jurisdiction over spousal support after a lengthy marriage when a spouse may not be able to be self-supporting because of age or poor health (see fn. 8, *ante*), and this rule can, under proper circumstances, apply equally to a medium length marriage. (See *In re Marriage of Neal* (1979) 92 Cal.App.3d 834, 846 [155 Cal.Rptr. 157] [seven-year marriage and wife with health problems, required retention of jurisdiction unless showing of self-support].) ▪▪▪ The original support order apparently placed Marilyn into this category of spouses for which open-ended support and jurisdiction was appropriate. Thus, premised on the original support order, termination of support and jurisdiction can only be justified if Forrest has carried his burden to show changed circumstances.

▪▪▪ The change of circumstances includes all factors affecting need and ability to pay. (*In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 710.) It appears the court should also be able at a modification proceeding to consider the balance of the equities to the extent they are impacted by any change in circumstances. (See, e.g., *In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453 [at modification proceeding, court may consider spouse's delay in seeking employment or refusal of available employment].) However, the mere passage of time is not alone a sufficient basis for modification. (*In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 710.) With the passage of time, changed circumstances may occur, but it is the change in circumstances and not the passage of time which is material. (*Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12, 15 [124 Cal.Rptr. 742]; *In re Marriage of Wilson* (1975) 51 Cal.App.3d 116, 119 [123 Cal.Rptr. 887].)

---

[10]There is a statutory presumption that a 10-year marriage is of long duration. Section 4801, subdivision (d), states in part:

"Except upon written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely where the marriage has been of long duration.

"For purposes of retaining jurisdiction, there is a presumption affecting the burden of providing evidence, that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration. However, the court may consider periods of separation during the marriage in determining whether the marriage is in fact of long duration. Nothing in this section precludes a court from determining that a marriage of less than 10 years is a marriage of long duration. Nothing in this section limits the court's discretion to terminate spousal support in subsequent proceedings upon a showing of changed circumstances."

Here, although the court found some changed circumstances in the form of cohabitation (now terminated) and (perhaps) employability, the court made it clear it was not exercising its discretion to terminate support on these grounds, and it emphatically concluded Marilyn had a continued need for support.[11] Nor did the court find it was probable Marilyn would be self-supporting by the termination date, so as to justify shifting the burden to her to show a continued need for support at a subsequent modification proceeding in order to avoid termination of support and jurisdiction. (Contrast *In re Marriage of Richmond, supra,* 105 Cal.App.3d at p. 356; cf. *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1230 [225 Cal.Rptr. 234] [court properly terminated jurisdiction based on finding a woman in her 30's suffering from epilepsy was employable].)

There is some vague suggestion in the court's oral comments that it may have weighed other factors in its decision, i.e., the references to Marilyn's four marriages and adult children, and that the decision was not based on time alone, but also on the fact Forrest had acted responsibly under the circumstances. The marital history and number of adult children are matters which preexisted the initial dissolution judgment and cannot be considered changes in circumstances. Further, a spouse's responsible compliance with previous court orders is not a factor which, on this record, supports terminating spousal support or divesting the court of jurisdiction over that issue. In any event, the court's written statement of decision does not mention these considerations, but simply states the time had come to shift the burden of support to society. The written statement of decision controls over vague antecedent oral statements. (*Wilcox* v. *Sway* (1945) 69 Cal.App.2d 560, 565 [160 P.2d 154].)

Here, Marilyn would be 59 years old on the date set for termination of support, and the court at the modification proceeding found she was disabled and in need of support. Marilyn did not work during her eight-year, eleven-month marriage *at Forrest's request.* Since she married Forrest when in her forties and had not worked during the five or six years preceding the marriage, if she was ever going to reenter the job market her years of

---

[11]Marilyn claimed the cohabitation consisted of a former husband living with her while recuperating from cancer surgery, and he did not contribute to her expenses during that time period. She claimed her employment in her son's office was only temporary to help him during a financial crisis, he did not pay her, and she could not keep up with the office work once it got busy.

Although Forrest, without citation to the record, makes reference in his brief to matters suggesting Marilyn could work and has other assets and means to support herself apart from employment, he does not challenge the trial court's finding that Marilyn had a continued need for support.

Given the court's finding of Marilyn's need for support, and noting the parties have not done so, we need not summarize the evidence in the record addressing these issues.

marriage to Forrest could have been the crucial time period. As stated in *In re Marriage of Wilson*, a "displaced homemaker" from a lengthy marriage may find it impossible to enter the job market and it may be appropriate for the husband to have support obligations of extended duration. (*In re Marriage of Wilson, supra*, 201 Cal.App.3d at p. 918, & fn. 4.) Here, although the almost nine-year marriage may be characterized as of medium duration, given the original support order which recognized Marilyn's assumption of domestic responsibilities when she was in her forties at Forrest's request, and which did not find the circumstances warranted an order that she enter the work force, termination of support cannot now be justified absent some changed circumstance which shows she will be self-supporting at a particular date or other factors which justify modification.

We recognize the courts may properly issue orders encouraging spouses to seek employment and to work toward becoming self-supporting. (*In re Marriage of Gavron, supra*, 203 Cal.App.3d at p. 711.) When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with his/her ability, that factor may be taken into consideration in fixing the amount of support in the first instance or in modification proceedings. (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 893 [101 Cal.Rptr. 295].) However, absent provisions in the original support order designed to direct the spouse toward becoming self-supporting, an unemployed spouse should not be penalized years later for a failure to become employed. (*In re Marriage of Gavron, supra*, 203 Cal.App.3d at p. 712.) Here, there was no order directing Marilyn into the work force in the original order, and there was no finding in the modification order that Marilyn had avoided work she was capable of doing. Although it was within the trial court's discretion at the modification proceeding to conclude the work-hardening order was an appropriate means to encourage Marilyn to evaluate her capabilities, in the absence of a finding that Marilyn could reasonably be expected to become self-supporting or the equities have shifted, the court should refrain from setting a termination date and should keep the burden of future modification on the supporting party.

In sum, the focus of the trial court's decision, as reflected in its written statement, was not that Marilyn would no longer need support nor that the equities had shifted based on changed circumstances, but was its erroneous perception that the mere passage of time required it to shift the support obligation from the ex-spouse to society and to terminate its jurisdiction over spousal support.

Judgment reversed.

Wiener, Acting P. J., concurred.

BENKE, J.—I concur in the result reached by the majority. I write separately to emphasize my concurrence is based upon the content of the superior court's order of September 25, 1989, which fails to delineate factors upon which the trial court could properly terminate support.

As this court pointed out in its unanimous opinion in *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913, 920 [247 Cal.Rptr. 522], where, as here, a relatively short marriage is involved, a trial court may, after considering the totality of circumstances, and weighing all factors contained in Civil Code section 4801, subdivison (a), terminate support. The lower court's order here fails to demonstrate the reflection required by *Wilson*. In effect, the sole grounds articulated by the trial court were that Forrest had acted responsibly and the parties were "at that point in time" where support should end.

On the other hand as in *Wilson*, here disability alone is not sufficient to require indefinite support payments from Forrest. Indeed at some point it is conceivable the lengthy duration of support, even if examined superficially, will be clearly unjust in light of the short duration of the marriage and will alone qualify as a changed circumstance under Civil Code section 4801, subdivision (a)(10).[1] I assume the majority opinion despite its hesitation to read *Wilson* "too broadly" would find difficulty permitting such inequity simply because the original support order was open ended. I for one do not believe the ability of supporting spouses in short marriages to terminate support should depend entirely upon the use of "magic words" in the original support orders. In my view such a rigid reading of the statute and pertinent precedent would unduly limit the discretion of trial courts and lead to radically different results in substantially similar cases.

A petition for a rehearing was denied October 28, 1991, and respondent's petition for review by the Supreme Court was denied January 15, 1992.

---

[1] Civil Code section 4801, subdivision (a)(10), permits the court to consider as a changed circumstance "Any other factors which it deems just and equitable."