[No. A050041. First Dist., Div. Five. Feb. 7, 1992.]

In re the Marriage of MARILYN J. and DANIEL J. BAKER.
MARILYN J. BAKER, Respondent, v.
DANIEL J. BAKER, Appellant.

## COUNSEL

Casper, Loewenstein & Schwartz, Peter G. Loewenstein and William Hassler for Appellant.

Burak & Berg and Robert Berg for Respondent.

## OPINION

KING, J.—In this case involving a marriage of less than 10 years' duration in which the supported spouse's income from future employment was speculative, we hold that the trial court did not abuse its discretion in refusing to fix a termination date or a future step-down in the amount of spousal support. We also hold that it is premature to consider a claim that the order is erroneous because, without a future change of circumstances, it requires the payment of spousal support for a period far in excess of the length of the marriage. Even if there were no change of circumstances, the court possesses jurisdiction in the future to modify the order if, upon a proper motion, the court finds it would be just and equitable to do so.

### FACTS

Marilyn and Daniel Baker were married on January 7, 1978. It was the fourth marriage for Daniel and the second marriage for Marilyn.[1] There were no children of this marriage and neither party had children by any previous marriage. The parties first separated on January 15, 1985, but reconciled in October. The reconciliation failed, and marital status was dissolved in a bifurcated proceeding on December 30, 1988. Marilyn was 51 at the time of the dissolution and Daniel was 50. Both parties were in good health.

Prior to the parties' marriage, Marilyn was briefly employed as a real estate agent. During the marriage, Marilyn was essentially out of the job

---

[1]For ease of reference, we will refer to the parties by their first names, Daniel and Marilyn. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

market. She testified that she gave up her real estate career at Daniel's insistence because he wanted her to be home when he got home, and he did not want her to work on weekends. However, she occasionally used her real estate license to sell property owned by one or both of the parties. Marilyn's earnings were nominal throughout the marriage, ranging from nothing whatsoever in 1981 and 1984 to a high of $31,000 in 1986 earned in connection with the sale of the parties' home.

Prior to and during his marriage to Marilyn, Daniel was an insurance broker in an insurance company in which he had a 20 percent shareholder interest. Daniel's yearly earnings were routinely in excess of $100,000.

The court heard evidence that the life-style of the parties was "opulent," including part ownership and use of a $100,000 yacht; vacations to the Bahamas, Hawaii, and Europe; and the use of BMW and Mercedes Benz automobiles. The Lafayette residence in which the parties resided during 5 years of their marriage was 3,800 square feet on an acre of land and sold for $775,000 in 1985. They employed a housekeeper and a gardener to help maintain the residence. Daniel never placed a limit on Marilyn's expenses, and he gave her more than $50,000 worth of jewelry, including three Rolex watches.

At the time of trial Marilyn was living in a condominium in Lafayette worth approximately $200,000 and driving a Toyota while Daniel was living in a home in Alamo purchased for $550,000 and driving a red BMW, a white BMW and a Jeep Wagoneer. Marilyn had returned to work as a real estate agent, and she believed her long-range future looked good. However, she testified that her income was not sufficient to cover her expenses. Marilyn believed her earning ability was hindered because she had been out of the real estate business for so many years, and during her absence the market had changed and she had lost clients. In addition, the market was experiencing "an incredibly quick slowdown" which would in all likelihood continue. She declined to predict her future earnings because there were too many uncertain economic factors to consider.

The court ordered Daniel to pay Marilyn $2,400 monthly spousal support until "terminated by further order of the court, petitioner or respondent's death, or petitioner's remarriage, whichever first occurs." The spousal support order was based on the court's finding that Marilyn had a gross annual income of $30,000, less $5,619 in unreimbursed business expenses, as compared with Daniel's gross annual income of $106,000, less $18,000 in unreimbursed business expenses. The court also continued its prior order

requiring Daniel to maintain health insurance for Marilyn. This appeal followed.[2]

## ANALYSIS

▮ Daniel submits that the trial court, as a matter of law, should have limited the duration of spousal support by either setting a termination date or providing a "step-down" procedure whereby the level of support would decrease over time. In picturesque language, he claims the trial court's order chained him "to the carcass of this dead marriage for the remainder of his days."

▮ It is within the broad discretion of the trial judge to fix the amount and duration of spousal support. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].) In exercising that discretion, the trial court must evaluate the factors set out in Civil Code section 4801, subdivision (a).[3] (*In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 479.) These factors as applicable here include: the earning capacity of each spouse; their respective needs; the obligations and assets of each; the duration of the marriage; the time required for the supported spouse to acquire appropriate education, training and employment; the ability of the supported spouse to engage in gainful employment; the age and health of the parties; their standard of living; and any other factors which the court deems just and equitable. " '[A]n abuse of discretion is shown—i.e.,— where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.' " (*Id.* at p. 480, citations omitted.)

▮ In determining this was not a case warranting a fixed termination date for spousal support, the trial court made findings which closely parallel the Supreme Court's language and reasoning in *In re Marriage of Morrison, supra,* 20 Cal.3d at page 437.[4] In that case the Supreme Court found an abuse of discretion when the trial court divested itself of jurisdiction to

---

[2]After Daniel filed his notice of appeal, Marilyn filed a cross-appeal. Her cross-appeal was ordered dismissed on January 9, 1991, based on her failure to procure the record on appeal within the time limits allowed or to apply for relief from that default.

[3]Unless otherwise indicated, all further statutory references are to the Civil Code.

[4]Commissioner James H. Libbey, the judicial officer who tried this case, is one of the most experienced, knowledgeable, conscientious and competent family law judicial officers in California. He has been the judicial officer handling most family law cases in the Contra Costa County Superior Court at all stages, including trial, for over 10 years. His expertise is exemplified by his statement of decision as it pertains to the issues Daniel raises on appeal: "Respondent request[s] that the current order include a substantive step-down or an absolute termination date is denied. The marriage of the parties is just under ten years duration. Both

award future spousal support in a 28-year marriage without any evidence in the record that the wife would be self-supporting. In *Morrison*, the wife had no significant job skills or work history and had been able to secure only low-paying, part-time employment. Additionally, the record indicated that the wife's ability to obtain full-time employment might be hampered by medical problems. The court emphasized that by terminating jurisdiction, a court "loses forever its power to extend support payments, no matter what circumstances subsequently develop." (*Id.* at p. 454, fn. 11.) Consequently, the lesson of *Morrison* is that a court should not "burn its bridges" and fail to retain jurisdiction if the record does not contain evidence of the supported spouse's ability to meet his or her future needs. (*Id.* at p. 453.) In a subsequent case, the Supreme Court emphasized that *Morrison* was "particularly applicable to lengthy marriages." (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467 [204 Cal.Rptr. 568, 683 P.2d 248] [marriage of 11 years held to be of sufficient length to bring it within reasoning of *Morrison*].)

Daniel argues there are several reasons why any reliance on the reasoning in *Morrison* is misplaced. Primarily, he emphasizes that the marriage at issue was less than 10 years and thus was not presumptively a long marriage (§ 4801, subd. (d)); that the parties were both mature and established adults when they entered into this marriage; that Marilyn could not be considered a "displaced homemaker" who sacrificed her career for her husband and children; and that he had already paid temporary spousal support for more than two years.

He goes on to argue that if the reasoning of our decision in *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260 [255 Cal.Rptr. 488] had been followed, the court would have appropriately exercised its discretion by setting a termination date for Daniel's obligation to pay spousal support or at least would have set a step-down where permanent spousal support would decrease over time. In *Hebbring*, we found an abuse of discretion in the trial court's open-ended retention of jurisdiction over spousal support after a two-year, two-month childless marriage where the supported spouse was in good health and had permanent employment providing enough income for self-support. (*Id.* at pp. 1266-1267.) Any reliance on the reasoning in *Hebbring* is misplaced because the marriage under scrutiny herein was of much

---

are working to capacity. [Daniel's] gross income is in excess of three times that of [Marilyn's] (and since separation has varied from three to nine times that of [Marilyn's] income). [Marilyn] is not capable of supporting herself in a condition which even remotely resembles the marital standard of living. No evidence has been presented from which the court can conclude that at some specific point in the future [Marilyn] will become able, or even better able, to support herself without continuing assistance from [Daniel]. An order for a substantive step-down or a termination date at this point could only be based on totally unsupported speculation. The court declines to so speculate."

longer duration than the marriage in *Hebbring* and the supported spouse in *Hebbring* was able to generate enough income to support herself while Marilyn was only partially self-supporting and had an uncertain financial future.

 The court possesses broad discretion in balancing all of the applicable factors in section 4801, subdivision (a), and making a determination whether or not to divest itself of jurisdiction over spousal support on a certain date. Considering the myriad of factual circumstances which the trial court must consider in making its order, it is the rare case, such as *Morrison* or *Hebbring*, where a court is duty bound to exercise its discretion in only one way. Daniel's arguments on appeal, in effect, ask us to review the evidence anew, determine the weight to be given each factor listed in section 4801, subdivision (a), and use our own independent judgment in deciding whether jurisdiction should be terminated in this case. This we cannot do. We are neither authorized nor inclined to substitute our judgment for the judgment of the trial court. Where the issue on appeal is whether the trial court abused its discretion, the showing necessary for reversal is insufficient if it merely emphasizes facts which afford an opportunity for a different opinion. Daniel must show "that no judge would reasonably make the same order under the same circumstances." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].) Daniel has not done so.

 The pertinent facts were that the parties were married for less than 10 years, during which Marilyn was not expected to and did not work outside the home because of the life-style of the parties; that after the parties separated she reentered the work force as a real estate agent but was not producing an income anywhere near what would be sufficient to assimilate the life-style enjoyed by the parties during their marriage; and that there was no way to accurately predict her future earnings because the real estate market was volatile and subject to economic factors beyond her control. Meanwhile, Daniel continued to enjoy the same life-style enjoyed during the marriage; he had a stable income of long duration; and he had the existing ability to provide such support. "[O]rders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations. [Citations.]" (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [101 Cal.Rptr. 295].) On this record, any order directing Marilyn to be self-supporting on a certain date would be based on "mere hopes or speculative expectations." Consequently, the court was not required to "burn its bridges" by terminating jurisdiction or ordering automatic reductions in spousal support. Such unknown future developments are better left to modification proceedings which have been provided for that very purpose. (*Ibid.*)

In further support of his argument that the court abused its discretion, Daniel relies on a number of cases where the trial court's exercise of discretion in terminating jurisdiction was upheld. (See *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913 [247 Cal.Rptr. 522] [affirming termination of jurisdiction after support had been paid for almost five years after a five-year, ten-month marriage]; *In re Marriage of Bukaty* (1986) 180 Cal.App.3d 143 [225 Cal.Rptr. 492] [affirming termination of jurisdiction after three years of spousal support after a nineteen-month marriage]; (*In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216 [225 Cal.Rptr. 234] [affirming termination of jurisdiction after five-year marriage to wife who was epileptic but employable].)[5]

We find these cases of limited value in reviewing the court's exercise of discretion here. ██ ██ None of the marriages under review in those cases could be considered "lengthy" for purposes of invoking the rule of *Morrison*. (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453.)[6] **(1d)** While the number of years the parties were married herein just fell short of the 10 years necessary to qualify for the statutory presumption that the parties' marriage was of "long duration" (§ 4801, subd. (d)), the 10-year statutory minimum is not absolute. The statute itself points out that "[n]othing in this section precludes a court from determining that a marriage of less than 10 years is a marriage of long duration." (§ 4801, subd. (d).) Consequently, the trial court could consider the marriage "lengthy" for purposes of concluding that termination of support on a specific date was unwarranted absent evidence Marilyn would be self-supporting by that time.

But more importantly, Daniel's reliance on these cases ignores the difference between an appellate court upholding the exercise of the trial court's discretion and finding an abuse of that discretion. ██ "Although patterns in marital breakups emerge, each couple has such a diverse mix of

---

[5]Daniel also relies upon *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560], but mischaracterizes the holding as finding "no fault" with a spousal support award ordering an automatic step-down at the end of three years. At the time the court issued its order, the supported spouse had custody of two minor children, had no job experience as a result of attending to domestic duties exclusively during the twenty-one-year marriage, and had no job prospects. Although the automatic step-down was criticized in the opinion as being "based on optimistic speculation rather than on solid evidence," the supported spouse *did not appeal from this order.* (*Id.* at p. 50.) Since the court did not consider and decide the merits of ordering a step-down in spousal support, *Ostler & Smith* lends no support to Daniel's position.

[6]As we have seen, the "*Morrison* rule" precludes an absolute termination of support without a determination that the supported spouse can adequately meet his or her financial needs. However, this rule has been held to apply only to "lengthy" marriages. (See *In re Marriage of Bukaty, supra,* 180 Cal.App.3d at p. 149; *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 663 [235 Cal.Rptr. 587] [*Morrison* rule not applicable to short-term marriages].)

circumstances that trial courts must have broad discretion in weighing and balancing the various factors in each particular marriage before making a suitable support award. . . . Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders." (*In re Marriage of Ostler & Smith, supra*, 223 Cal.App.3d at p. 50.) All the decisions relied upon by Daniel found that terminating jurisdiction was within the broad discretion possessed by the trial court in fixing the duration of spousal support. None held that *as a matter of law* it would have been an abuse of discretion, under the same facts, if the court had decided to make an alternative order on the issue of spousal support. For this reason, these cases are of limited usefulness in convincing us that the trial court abused its discretion.

 We have previously discussed in considerable detail the factors to be considered by the trial court in considering the issue of spousal support, particularly the issue of whether to fix a termination date. "Having conducted the trial, the trial judge knows much more about the parties and what constitutes an appropriate duration for spousal support than will ever be known by a later judge called upon to decide a motion for termination of jurisdiction on a busy domestic relations law and motion calendar. [¶] For this reason the trial judge must not be reluctant and, indeed, has a duty to fix a termination date for spousal support where justified, after considering the circumstances set forth in section 4801, subdivision (a), which are applicable to the case, and the reasonable inferences to be drawn from the evidence. Likewise there should be no reluctance to have the duration for spousal support open-ended where the evidence and the section 4801, subdivision (a), circumstances in the case justify it. If the trial judge believes a termination date is appropriate but is concerned that future changes in circumstances might require an extension, the proper approach is to fix a termination date and reserve jurisdiction until that date to consider a motion to modify the termination date. [¶] If the trial judge makes what all too often is the typical order, that is, spousal support of a specified amount payable with no termination date, the judge hearing a motion to terminate years later may conclude that the trial judge really intended that spousal support should not end except upon the death of the parties or the remarriage of the supported spouse. If that is not what the trial judge intends, he or she owes a duty to the parties, and to the colleague who will hear a future motion to termination jurisdiction, to say so in ordering spousal support. Both the parties and any judge hearing future motions are entitled to know the intentions of the trial judge in ordering spousal support." (See *In re Marriage of Prietsch & Calhoun, supra*, 190 Cal.App.3d at pp. 664-666.)

 Here, in his statement of decision the trial judge made it clear that fixing a termination date or ordering a future step-down would be inappropriate speculation. The record certainly supports that conclusion. However,

the trial judge also carried out his responsibility, as we discussed it in *Prietsch & Calhoun,* because his statement of decision also sets forth findings as to the employment history of the parties, their marital standard of living, their age and health and, most importantly, the absence of evidence from which a determination could be made when Marilyn would be fully self-supporting. Daniel had the burden of proving that Marilyn would become fully or more completely self-supporting at some point in the future. He failed to sustain his burden of proof. Also, the statement of decision clearly demonstrates that a modification or termination of the order would be appropriate when economic conditions improve and Marilyn's real estate employment produces sufficient income to provide for her own support.

Finally, we come to Daniel's contention that the failure of the trial court to fix a termination date or to provide for a step-down in the amount of spousal support constituted reversible error because it may require the payment of temporary and permanent spousal support for a period far in excess of the length of marriage, if no change in circumstances occur. ■ "The propriety of an order modifying spousal support 'rests within the trial court's sound discretion. So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it. [Citations.] Reversal requires a clear showing of abuse of discretion. [Citations.] A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order. [Citation.] Otherwise, dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modifications with no burden of showing a justification to change the order. Litigants 'are entitled to attempt, with some degree of certainty, to reorder their finances and [life-style] in reliance upon the finality of the decree.' [Citations.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order." (*In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 480.)

Thus, the reason for the change of circumstances rule is to preclude relitigation of the same facts. ■ However, there can be cases where there have been no change of circumstances yet it would be just and equitable to modify an existing order. Although the specification of " '[a]ny other factors which [it] deems just and equitable' " has appeared in section 4801, subdivision (a), since its enactment as part of the Family Law Act, it was not utilized as the basis for an appellate decision for 20 years. (See *In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 485; *In re Marriage of Ostler & Smith, supra,* 223 Cal.App.3d at p. 48.) No matter how detailed the statutory scheme for marital dissolution becomes, orders issued for spousal support must be and remain just and equitable.

Under limited circumstances, trial courts can exercise their broad discretion to modify or terminate a support order after weighing the circumstances of the parties and the factors contained in section 4801, subdivision (a), especially where, from the evidence, the court finds "factors which it deems just and equitable." In a recent concurring opinion, Justice Patricia Benke stated, "it is conceivable the lengthy duration of support, even if examined superficially, will be clearly unjust in light of the short duration of the marriage and will alone qualify as a changed circumstance under Civil Code section 4801, subdivision (a)(10)." (*In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1205 [286 Cal.Rptr. 127].) Whether this truly constitutes a change of circumstances, or will be an exception to the change of circumstances rule, we leave for another day when that issue is properly before us for decision. In this appeal, the issue is premature and not ripe for decision. It is gross speculation to assume that circumstances will not change before it would be just and equitable to modify the order for spousal support based upon the order's duration alone.

Daniel also challenges the trial court's order requiring him to maintain Marilyn's health benefits. He does so on identical grounds as his challenge to the trial court's retention of jurisdiction over the issue of spousal support. By parity of reasoning, we also reject this claim.

The judgment is affirmed.

Low, J.,* and Haning, J., concurred.

---

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.