[No. D006132. Fourth Dist., Div. One. May 31, 1988.]

In re the Marriage of ELMA MAXINE and THOMAS R. WILSON.
ELMA MAXINE WILSON, Appellant, v.
THOMAS R. WILSON, Respondent.

**COUNSEL**

Sharron Voorhees and John B. Kingston for Appellant.

Edwin A. Johnson for Respondent.

**OPINION**

**HADEN, J.***—Elma Wilson appeals an order terminating her spousal support after 58 months following a 70-month marriage. Having found her

_____
* Assigned by the Chairperson of the Judicial Council.

permanently disabled and her former husband able to pay continued support, the trial court weighed the length and nature of the marriage, and the duration of spousal support payments and ruled husband no longer had the legal obligation to support his former spouse. Because we find no abuse of discretion, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas and Elma Wilson (Tom and Elma) were married in May 1976 and separated in March 1982, after 70 months. Elma was injured in a fall two years before separation.[1] As a result of her injuries or subsequent infection following dental work, she could no longer work as a bartender. In 1983 her doctor believed her neurologic deficit would remain permanent but recommended some rehabilitation to enable her to pursue work which would not require verbalization. A clinical psychologist opined Elma suffered brain damage which left her "lacking in social judgment, common sense, and social intelligence." The psychologist felt Elma would probably not succeed where she had to make decisions using common sense.

In the November 1983 stipulated interlocutory judgment, Tom received, inter alia, his Navy pension and a Volkswagen while Elma took the house, a Jaguar automobile, and spousal support of $500 per month for two years plus medical insurance coverage for the same period.

In September 1985 Elma sought continued spousal support. She anticipated further brain surgery in one to two years. The same clinical psychologist reexamined her and concluded "[i]t appears unlikely that Mrs. Wilson could succeed in today's competitive job market." "[S]he would have difficulty with any job that required an intellectual component that was above the mildly mentally retarded level." The psychologist further stated, "[I]t appears doubtful that Mrs. Wilson is able to profit from training that could lead to employment." In December 1985 the trial court extended the $500 per month spousal support for one year. After considering Elma's serious physical problems, the court went on to explain this was not a lengthy marriage, there were no children born of the marriage, and the ages of the parties at the time of the marriage indicated they had established

---

[1] Elma's initial injury was the result of a fall during an argument with Tom. While Tom claimed she fell in a drunken stupor and struck her head, Elma who suffered amnesia regarding the incident, felt Tom was a ". . . mechanical force involved in the anatomy of how the accident occurred." Surgery was required, followed by further surgery because of an infection her doctor opined was caused by subsequent dental work. Elma received a $20,000 settlement under the parties' homeowner's insurance. The trial court declined to make a finding on the issue of causation or fault.

their lives before they married. In April 1986 the court temporarily reduced support to $350 per month when Tom was unemployed.

In September 1986 Elma once again sought continuing spousal support, claiming she was still unemployed and neither rehabilitated nor capable of rehabilitation. She continued to receive $436 per month in social security benefits. She noted her daughter and son-in-law had been living with her since May 1986 and he began earning $5.00 per hour in September 1986 but was unemployed by the December 1986 hearing. Her daughter was in rehabilitation for injuries suffered in an automobile accident. In October 1986 Tom declared he earned over $2,200 per month in salary plus over $1,000 in Navy retirement.

At a hearing on the support issue in December 1986 Tom argued Elma should not be entitled to lifetime support from him based on a 70-month marriage. The court found Tom, age 46, had the earning capacity to continue to make support payments and Elma, age 48, had a need for such payments because she was both disabled and could not regain her previous income earning status. The court considered the length of the marriage (70 months) and the length of the spousal support period (58 months). The court then stated, "My question . . . that I'm faced with is at what point in time does the obligation to assist Mrs. Wilson become one of society's as distinguished from an obligation that is Mr. Wilson's, and I find that it is society's at this point in time." The court continued support for four months and then terminated it.

## DISCUSSION

### I

A promise to "love, honor and cherish as long as we both shall live" is in fact easily and frequently revocable today. It is lamentable that many decide to live together without benefit of such vows and many who take them soon forget them. However, we are concerned here with legal, not moral, obligations. We are asked to decide whether following a childless marriage of short duration it was an abuse of discretion to terminate spousal support even though the supported spouse was permanently disabled.

■ Wide discretion is vested in the trial court in determining the amount and duration of spousal support. "In order not to be arbitrary, discretion must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the husband. Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all circumstances before it being considered. (*In re*

*Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].)" (*In re Marriage of Melton* (1980) 107 Cal.App.3d 559, 564 [165 Cal.Rptr. 753].)

Thus, an appellate court must act with cautious judicial restraint in reviewing these orders. (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 458 [152 Cal.Rptr. 668].) "An abuse of discretion will be perceived if, after calm and careful review of the entire record, it can fairly be said that no judge would . . . make the same order under the same circumstances." (*Ibid.*)

## II

■ Here the trial court exercised discretion along legal lines in that it followed Civil Code[2] section 4801[3] which provides for spousal support in any amount and for any period just and reasonable, provided the trial court in making the award considers all of the following circumstances: (1) the earning capacity of each spouse; (2) the needs of each party; (3) the obligations and assets of each party; (4) the duration of the marriage; (5) the ability of the supported spouse to engage in gainful employment without detriment to dependent children in his or her custody; (6) the age or health of the parties; (7) the standard of living of the parties; and (8) other factors which the court deems just and equitable.

The record reflects the trial court weighed each of these eight factors before exercising discretion to terminate support. Tom had the earning

---

[2] All statutory references are to the Civil Code.

[3] Section 4801 provides in part: "(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. In making the award, the court shall consider all of the following circumstances of the respective parties:

"(1) The earning capacity of each spouse, taking into account the following:

"(A) The marketable skills of the supported spouse; the job market for those skills; the time and expenses required for the supported spouse to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(B) The extent to which the supported spouse's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties.

"(C) The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse.

"(2) The needs of each party.

"(3) The obligations and assets, including the separate property, of each.

"(4) The duration of the marriage.

"(5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.

"(6) The age or health of the parties.

"(7) The standard of living of the parties.

"(8) Any other factors which it deems just and equitable."

capacity to continue to make support payments. Elma had virtually no marketable skills and could not regain her previous income earning status as a bartender which was about $600 per month plus tips. Elma's psychologist believed she could not succeed in any job which required common sense because of her brain damage. This was not a marriage in which Elma's present or future earning capacity was impaired by periods of unemployment incurred to permit her to attend to domestic duties. The parties were in their 40's when they married and, the court noted, had already established their lives. While Elma already had adult children, there were no children of this marriage. There was no evidence Elma had contributed to the attainment of Tom's career. Since he was retired from the military at the time support was awarded, and the marriage lasted only 70 months, his military career must have been completed or substantially completed when the couple married. The court found Elma had a need for support because she was disabled and could not regain her previous income earning status. The court reviewed the obligations and assets of each party, the length of the marriage and duration of the support period. Finally, the court balanced the equities and decided under these circumstances the obligation to assist Elma should shift from Tom to society.

We note the parties initially stipulated to two years of support, subject to review at the end of that period. Elma entered into this stipulation at a time when the extent of her injuries was apparent. Nevertheless, the trial court extended support until the support period nearly equalled the length of the marriage.

Elma contends it was an abuse of discretion to terminate spousal support where there was no present evidence of her ability to be self-supporting. She includes medical coverage in her support claim and we treat them together here. Specifically, Elma argues the trial court failed to comply with *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41], in terminating support. *Morrison,* however, concerned a lengthy marriage of 28 years during which wife at husband's insistence devoted her time principally to maintaining the home and raising two children. In this context a trial court should not "burn its bridges" and fail to retain jurisdiction over support unless the record indicates the supported spouse will be able adequately to meet his or her financial needs at the time of termination. (*Id.* at p. 453.) As previously discussed, the instant case deals with neither a lengthy marriage nor a typical "displaced homemaker".[4] At the time of this

---

[4]*Morrison* and many of the cases in this area treat the justifiable concerns for displaced homemakers following lengthy marriages. *Morrison* explains: "In some cases the supported spouse may never be able to adequately provide for his or her needs. A wife who has spent her married years as a homemaker and mother may, despite her best efforts, find it impossible to reenter the job market. In such a case 'the husband simply has to face up to the fact that

short marriage Elma was a middle aged bartender with adult children. Her lifestyle was established. On separation both parties stipulated to support for a fixed term. Accordingly, *Morrison* need not apply here.

Further, this is not a case in which the trial court terminated support to encourage the supported spouse to seek employment.[5] The court recognized both the grievous and permanent nature of Elma's disability. It was beyond the court's power to render her self-supporting. "In short-term marriages spousal support will most usually be ordered where the needs of minor children or the employment circumstances of the supported spouse require spousal support until the supported spouse can readjust to single status." (*In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d 645, 663 [235 Cal.Rptr. 587].) Neither minor children nor any reasonable likelihood of employment readjustment was present here.

Elma attempts to demonstrate self-support is the key to termination of jurisdiction over spousal support even in short marriages. Tom suggests duration of the marriage is paramount. While we understand why each seeks to emphasize that factor most favorable to his or her argument, this approach misses the forest for the trees. *In re Marriage of Neal* (1979) 92 Cal.App.3d 834 [155 Cal.Rptr. 157], and *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d 446 [disapproved on other grounds in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 (166 Cal.Rptr. 853, 614 P.2d 285)] each concerned spousal support of young displaced homemakers raising two small children after seven year marriages. *In re Marriage of Rives* (1982) 130 Cal.App.3d 138 [181 Cal.Rptr. 572], dealt with a short marriage of a mature childless couple who both continued to work. *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216 [225 Cal.Rptr. 234] involved a five-year marriage to a young wife who was epileptic but employable. In each case the court considered not one but several factors in deciding the support issue. (*In re Marriage of Neal, supra,* 92 Cal.App.3d at p. 846; *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d at p. 458; *In re Marriage of Rives, supra,* 130 Cal.App.3d at p. 164; *In re Marriage of Harrison, supra,* 179 Cal.App.3d at p. 1230.)

---

his support responsibilities are going to be of extended duration—perhaps for life. This has nothing to do with feminism, sexism, male chauvinism . . . . It is ordinary common-sense, basic decency and simple justice.' [Citation.] The same will, of course, be expected of a wife in those cases in which a husband has devoted his time to maintaining the home and raising the children while the wife has pursued a career outside the home." (*Id*. at p. 453.)

[5] The Assembly Committee on the Judiciary report in approving the Family Law Act expressed the legislative intent that courts should encourage supported spouses to seek employment. (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 662-663 [235 Cal.Rptr. 587].)

Although we are unable to find a California case with facts like these, *In re Marriage of Bukaty* (1986) 180 Cal.App.3d 143 [225 Cal.Rptr. 492] comes close. There an unemployable 64-year-old wife sought support after a 19-month marriage. She relied heavily upon her prior marriage to the same husband and lengthy cohabitation with him. After weighing all the section 4801, subdivision (a) factors the trial court ordered three years of support at $400 per month. On review the appellate court explained the *Morrison* proscription on support termination concerned lengthy marriages and did not apply to all marriages regardless of length. (*Id*. at p. 148.) As in the previously discussed cases, *Bukaty* looked to all section 4801, subdivision (a) circumstances.

While no one will dispute Elma's tragic disability, the clear trend is for trial courts to consider the totality of circumstances as required by section 4801. Self-support and length of marriage are each but one of eight important factors. (See *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 663.) Each must be balanced in light of the others. This rule applies even where a permanently disabled spouse may be denied support after a short marriage.

Once the trial court logically and reasonably applies section 4801, all that remains for the appellate court is a review for potential abuse of discretion. Because the trial court carefully weighed all eight factors, the decision to terminate support including medical coverage was not an abuse of discretion given the totality of circumstances.

The order is affirmed.

Todd, Acting P. J., and Benke, J., concurred.

On June 24, 1988, the opinion was modified to read, as printed above. Appellant's petition for review by the Supreme Court was denied August 17, 1988.