Filed 3/6/14  Marriage of Kuhs CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of VERONICA and ROBERT G. KUHS.<br><br>VERONICA KUHS,<br><br>　　　Appellant,<br><br>　　　　　v.<br><br>ROBERT G. KUHS,<br><br>　　　Respondent. | F066053<br><br>(Super. Ct. Nos. FL605156 & FL604579)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Law Offices of Ira L. Stoker and Ira L. Stoker for Appellant.

Stephen Temko for Respondent.

-ooOoo-

### INTRODUCTION

Appellant Veronica Kuhs argues on appeal that the trial court abused its discretion with regard to its spousal support determination.  Additionally, Veronica challenges the

trial court's order allowing respondent Robert G. Kuhs to be reimbursed for his separate property expenses incurred by replacing the roof of the family residence. We will affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Robert and Veronica were married on November 15, 1997. Tragically, during the birth of their only child Thomas in April 2001, Veronica suffered a hypoxic brain injury.[1] As a result, she is permanently disabled. Veronica has the mental capacity of a nine-year-old and suffers from moderate dementia and cognitive dissonance.[2] Additionally, Thomas was born with a rare genetic disorder known as neurofibromatosis type 1, or NF-1, also known as von Recklinghausen disease.

For several years following Veronica's injury and Thomas's birth, Veronica remained at the family residence. However, in 2005, as a result of Veronica's fixed delusion that Robert murdered her sister, as well as disagreements concerning the investment of medical malpractice settlement funds, Veronica moved to her mother's home.

In 2008, dissolution proceedings commenced. The parties' date of separation was determined to be June 17, 2005. The issue of marriage status was bifurcated and dissolution was granted February 8, 2012. Trial on the remaining issues of child custody and visitation, child support, spousal support, and property division was held May 7, 2012. The court issued its statement of tentative decision on May 25, 2012. The judgment of dissolution on those matters was filed August 22, 2012, and entered August 30, 2012.

Veronica filed a notice of appeal on October 15, 2012.

---

[1]"Brain hypoxia can rapidly cause severe brain damage or death" and is caused by a lack of oxygen to the brain. <http://www.nlm.nih.gov/medlineplus/ency/article/001435.htm> (as of Feb. 19, 2014).

[2]Veronica's brother Alfredo Saldana was appointed conservator of her estate in a separate proceeding and guardian ad litem in the proceedings below.

## DISCUSSION

### I.  Applicable Legal Standards

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  When an appeal is based on the insufficiency of evidence to support the trial court's ruling regarding an issue of fact, our authority "'begins and ends with a determination as to whether there is *any* substantial evidence'" to support the ruling.  (*Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370, disapproved on another ground in *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2.)  Conflicting evidence is viewed in the light most favorable to the prevailing party, all reasonable inferences weigh in favor of upholding the decision, and all conflicts must be resolved in favor of the judgment.  (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925.)  Evidence must be credible, reasonable in nature, and of solid value.  (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)

The determination of the valuation and division of property is within the trial court's discretion.  (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 423.)  An attack on the basis of the trial court's exercise of discretion must show that the means by which the lower court resolved the issue were legally improper.  This court will not reverse a discretionary ruling merely because the trial court could have made a better choice.  (*In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 749.)  An exercise of discretion may be reversed on appeal when the trial court makes an "arbitrary, capricious, or patently absurd determination" (*Adoption of D.S.C.* (1979) 93 Cal.App.3d 14, 25) or when "'no judge would reasonably make the same order under the same circumstances.'" (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 50, quoting *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114, disapproved on another ground in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453.)

3.

## II.  Spousal Support

Veronica argues the trial court abused its discretion in three ways with regard to the issue of spousal support.  Specifically, she claims the trial court failed to (1) determine Robert's present circumstances and ability to pay support at the time of trial, (2) give proper consideration to the standard of living established during the marriage, and (3) consider the Family Code[3] section 4320 factors when it denied her right to permanent spousal support.  Robert counters that Veronica stipulated to the use of particular documents relating to his ability to pay and, as a result, she cannot now claim error.  Moreover, Robert asserts the trial court accorded proper consideration to the standard of living during the marriage and to the section 4320 factors.  Therefore, the trial court did not err or abuse its discretion in terminating spousal support.

### A.  Consideration of the Section 4320 Factors

We begin with the applicable statute.  A court must consider all 14 of the factors enunciated in section 4320 when considering the marital standard of living and spousal support.  Failure to do so may be deemed an abuse of discretion.  (*In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090, 1105 [order reversed because trial court failed to consider husband's ability to pay and wife's needs]; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 305 [court abused its discretion by failing to consider husband's wealth].)

Here, the trial court properly considered all of the relevant factors.  Those identified by Veronica as not having been properly considered are specifically discussed below.

### B.  Earning Capacities of Veronica & Robert

Subdivision (a) of section 4320 provides:

---

[3]Further statutory references are to the Family Code unless otherwise indicated.

4.

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties."

The trial court's findings in this regard state as follows:

"1. The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, considering:

"a. The marketable skills of the supported party, the job market for those skills, the time and expenses required for the supporting [*sic*] party to acquire the appropriate education or training to develop those skills and the possible need for retraining or education to acquire other more marketable skills or employment.

"Here, [Veronica]'s physical and mental disabilities have left her unable to work. There is no need for any retraining or education.

"b. The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"[Veronica]'s reasons for unemployment have been unrelated to permitting her to devote time to domestic duties. Rather, her disabilities have left her permanently unable to work. [¶] … [¶]

"As indicated above, [Robert]'s current income available for support is $7,525 per month. [He] is a partner in a law firm and has the potential[] to earn as much or more over the course of his career. Therefore, [Robert] has the earning capacity to continue to pay support."

5.

Veronica's contention that the trial court's statement of decision is "silent as to the present capabilities and employment opportunities for" Robert is misleading. The trial court considered Robert's earning capacity and ability to pay support, and its determination in this regard is neither lacking nor unreasonable. Significantly, Veronica stipulated to the use of the certified public accountant Jerry E. Randall's figures for purposes of determining Robert's earning capacity and relied upon those figures below.

If Veronica wished the court to consider more current figures, it was incumbent upon her to ensure such evidence was before the court. (E.g., *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 ["The 'doctrine of invited error' is an 'application of the estoppel principle'"]; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1001-1002 [failure to raise objections at trial forfeits them for purposes of review on appeal]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686*; In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 759 [doctrines of waiver and invited error bar even direct attack on order entered pursuant to stipulation].) Because Veronica stipulated to the use of the accountant's figures for purposes of Robert's income and a spousal support determination, she invited any error and is estopped from arguing error in this regard on appeal.

### C. Robert's Investment or Retirement Accounts

Veronica contends the trial court "failed to consider other financial factors, such as, the savings, investment and/or retirement accounts" maintained by Robert as required by subdivision (c) of section 4320. Specifically, she argues the trial court should have "added the amounts contributed to the retirement accounts back into" Robert's income for purposes of the determination.

Initially, we note Veronica offers no legal authority in support of her assertion. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived [or forfeited]." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; see also *People v. Stanley* (1995)

6.

10 Cal.4th 764, 793; *Akins v. State of California* (1998) 61 Cal.App.4th 1, 50 [contention forfeited by failure to cite any legal authority]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [where point is merely asserted by appellant without argument or authority, it is deemed to be without foundation and requires no discussion by reviewing court].) Thus, we consider the argument forfeited under these waiver principles.

In any event, we have reviewed the record, as well as the trial court's statement of decision on the Vanguard IRA in particular, and find those rulings to be sound. There was no abuse of discretion and there is substantial, credible evidence in support of the court's ruling.

### D. Present Circumstances and Ability to Pay

As noted previously, Veronica takes issue with the fact the trial court's determination regarding an award of spousal support, and Robert's monthly income in particular, involved reliance upon a court-ordered appraisal prepared by the certified public accountant concerning the years 2004 through 2008. She contends the trial court erred by relying upon evidence that did not address Robert's present circumstances and ability to pay. Her argument is not well taken.

Subdivision (c) of section 4320 requires the trial court to consider "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living."

Prior to trial, Veronica expressly stipulated that the Randall appraisal would provide the basis for and evidence of Robert's income for purposes of support. In his income and expense declaration filed with the court on April 2, 2012, Robert declared the following, in relevant part:

> "(d) In hopes of facilitating a settlement of this matter, [Veronica's] representatives and I previously agreed to have forensic accountant Jerry Randall, CPA, do an appraisal of my interest in my law firm and an analysis of my income available for support. Mr. Randall concluded that my interest in the law firm is worth $46,000, and that my income available for support from the law firm is $101,808 per year, or $8,484 per month.

7.

> As far as I am aware, neither the value of my practice nor the amount of my income available for support is in dispute. In his July 20, 2011 Order, Judge Oglesby ordered that Mr. Randall's report be admitted into evidence without objection. [Citation.]"

The parties subsequently referenced Randall's report in their declarations in lieu of testimony and trial briefs. Veronica never objected to Randall's figures as stale. She cannot now be heard to complain on appeal that the trial court erred in relying upon those figures. (See *Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 403; *In re Marriage of Hinman*, *supra*, 55 Cal.App.4th at pp. 1001-1002; *Mesecher v. County of San Diego*, *supra*, 9 Cal.App.4th at p. 1686*; In re Marriage of Maxfield*, *supra*, 142 Cal.App.3d at p. 759.)

The trial court's statement of decision provides, in relevant part:

> "[Veronica] argues that [Robert]'s income available for support is $10,547 per month based on the cash flow analysis of [his] law partnership prepared by the court's appointed expert, Jerry Randall. [Citation.] The parties have previously agreed that this report may be admitted into evidence and relied upon by the court in determining an appropriate level of child and spousal support. The gross income available for support is contained in Appendix A of Mr. Randall's report. Specifically, that report indicates that for the forty-eight month period ending December 31, 2008, the average gross income of [Robert] is $7,525 and the average gross income of [Veronica] is $3,022. [Citation.] While Mr. Randall has determined the total income of the couple for that time period is $10,547 per month, the amount of that income attributable to [Robert] is $7,525. Therefore, the court finds that the appropriate amount for [Robert]'s income available for support to be $7,525."

A review of the record reveals the trial court's determination in this regard is neither arbitrary, capricious, nor patently absurd. Hence, reversal is not warranted. (*Adoption of D.S.C.*, *supra*, 93 Cal.App.3d at p. 25.)

### E. Marital Standard of Living

Relatedly, Veronica argues the trial court erred in its determination that the parties enjoyed a middle class standard of living during the marriage because she and Robert

enjoyed an "upper middle class lifestyle at the time of separation and … the findings of the trial court as it applies to the marital standard of living are not complete."

On this factor, the statement of tentative decision provides as follows:

> "[T]he court must begin with the general premise that the decision to award spousal support and, if so, the amount and duration, must be based on the standard of living established during the marriage. [S]ection 4320(a). This marital standard of living is a benchmark against which the factors in section 4320 may be weighed. Marriage of Ostler & Smith (1990) 223 Cal.App.3d 48.

> "Here, the testimony has established that the parties maintained a middle-class standard of living. Prior to [Veronica]'s injuries, the couple lived in a modest home which was worth less than $100,000. The couple rarely traveled. They drove older vehicles. The family income was approximately $65,000 at the time of [Veronica]'s injury and at the time of separation was less than $90,000. Following [Veronica]'s injury, they moved into a larger home. This move was made possible, in part, from [Robert]'s contribution of separate property for the down payment. At the time of separation, the couple had a modest amount of pre-tax retirement savings. While there was a settlement of the medical malpractice lawsuit for the injuries suffered by [Veronica], the funds from that settlement have been invested to provide a lifetime income for [her]. In considering spousal support, the Court has considered the factors required under … section 4320 as set forth below …."

Under the applicable rules of law, a party claiming omissions or ambiguities in the factual findings in a statement of decision must bring those omissions or ambiguities to the trial court's attention pursuant to Code of Civil Procedure section 634 before such objections will be considered by an appellate court. In other words, "if a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133–1134.) The rationale for this rule is that it would be unfair and inefficient to allow a party to lull the trial court and opposing party into believing the statement of decision was adequate and then claim error on appeal when the asserted error could have been clarified before the trial court. (*Id*. at p. 1138.)

9.

Here, the trial court issued its tentative statement of decision on May 25, 2012. It expressly provided that it would become "the Statement of Decision unless within ten (10) days any party files and serves a document that specifies controverted issues or makes proposals not covered in the Tentative Decision as provided by California Rules of Court, Rule 3.1590(c)." Nothing in the record demonstrates Veronica objected to the failure of the trial court to explicitly address her earnings prior to the date of injury, her concerns about the value of the family residence, the pre-tax retirement savings, or the settlement awarded to Robert as a result of the medical malpractice suit. For that reason, Veronica has forfeited the right to claim on appeal the statement was deficient in this regard. Therefore, we infer the trial court decided in favor of Robert as the prevailing party on these issues. (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133–1134.)

Additionally, Veronica has failed to cite to or provide an analysis of specific legal authority in support of her position. Hence, her argument is forfeited on this basis as well. (*Atchley v. City of Fresno*, *supra*, 151 Cal.App.3d at p. 647.)

Nevertheless, a review of the record reveals no abuse of discretion. The statement of decision and the trial court's conclusions regarding the marital standard of living are reasonable. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475 [standard of living not a precise mathematical calculation but a general reference point].) The conclusions were neither arbitrary nor capricious. (*Adoption of D.S.C.*, *supra*, 93 Cal.App.3d at p. 25.) Moreover, there is sufficient, credible evidence in the record to support the court's finding of a middle class lifestyle. (*Overton v. Vita-Food Corp.*, *supra*, 94 Cal.App.2d at p. 370.)

### F. Duration of the Marriage

Veronica also contends the trial court "erred in its findings as to length of marriage."

Subdivision (f) of section 4320 requires the court to consider the duration of the marriage. On this issue, the statement of decision found as follows: "The marriage was 7

years and 7 months in duration. Pursuant to … section 4336, the Court does not consider this to be a marriage of long duration for purposes of determining the length of time to set any support payments."

Section 4336 states, in relevant part:

> "(a) Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration.

> "(b) For the purpose of retaining jurisdiction, there is a presumption affecting the burden of producing evidence that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration. However, the court may consider periods of separation during the marriage in determining whether the marriage is in fact of long duration. Nothing in this subdivision precludes a court from determining that a marriage of less than 10 years is a marriage of long duration.

> "(c) Nothing in this section limits the court's discretion to terminate spousal support in later proceedings on a showing of changed circumstances."

In support of her argument, Veronica relies upon *In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 409-410 and *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1202. However, the *Teegarden* and *Heistermann* decisions do not dictate a result different from that reached by the trial court here.

In *Teegarden*, the husband became disabled during the marriage, suffering from the debilitating effects of lupus. (*In re Marriage of Teegarden*, *supra*, 181 Cal.App.3d at pp. 403-404.) The parties were married about seven and a half years. When the wife filed for dissolution, the husband sought and was awarded temporary spousal support. (*Id*. at p. 404.) At trial, the court found the husband had not met his burden of proving need for continued spousal support. The husband's subsequent motion for new trial was denied. (*Id*. at p. 405.) On appeal, the husband argued the trial court abused its discretion by denying his request and for failing to reserve jurisdiction on the issue. (*Id*. at p. 407.)

11.

The appellate court reviewed the parties' financial declarations, and the testimony of the wife and the husband's care provider (*In re Marriage of Teegarden*, *supra*, 181 Cal.App.3d at pp. 408-409), concluding that

> "[the finding] that husband failed to meet his burden of proof that he is entitled to spousal support can only be based on an implied finding that all the testimony was not credible and the express finding that the nature and extent of his illness was not established.
>
> "While it is not our function, but that of the trial court, to determine credibility of witnesses, here we have what appears to be a wholesale disregard of *all* the testimony before the court. Even if this were justified, the court was left with the parties' financial declarations which showed that husband was on disability and wife's income was approximately twice his and the stipulation of the parties that husband was disabled and unable to work. Under these circumstances, we can only conclude that the findings are not supported by the evidence and that the trial court abused its discretion when it failed even to reserve jurisdiction over spousal support for husband. [Citation.]" (*In re Marriage of Teegarden*, *supra*, 181 Cal.App.3d at p. 410.)

*Teegarden* is distinguishable. While that matter also involved a disabled supported spouse, this case does not involve the trial court's wholesale disregard of both testimonial and documentary evidence. Here, it is plain the trial court appreciated the nature and extent of Veronica's disabilities and the fact she was unable to work. It also considered, and properly so, a number of other factors, including the fact Veronica received about $3,100 per month in a lifetime annuity and Social Security benefits. It is also clear the trial court carefully reviewed the evidence before it, and the evidence supported the trial court's conclusion.

Veronica's reliance upon *In re Marriage of Heistermann* is misplaced. In that case, the wife had been awarded spousal support following a marriage of eight years, eleven months. The husband later moved to modify the award, asserting changed circumstances. In part, the husband contended the wife was living with another man, had been working for her son, an attorney, and no longer required psychological therapy. The wife, who had been unemployed for 14 or 15 years and had emotional, psychological and

12.

physical disabilities, explained she had temporarily provided clerical support to her son without compensation, and a former husband stayed with her briefly after recovering from cancer. (*In re Marriage of Heistermann*, *supra*, 234 Cal.App.3d at pp. 1197-1199 & fn. 11.) The trial court concluded the "'burden of support [of the wife] should shift from [the husband] to society.'" (*Id.* at p. 1198-1199.) It ordered that support, as well as its jurisdiction, were to terminate on November 29, 1989. (*Id*. at p. 1199.)

On appeal, the wife argued the trial court abused its discretion in setting a date to terminate support because she would be unable to support herself and the evidence established as much. (*In re Marriage of Heistermann*, *supra*, 234 Cal.App.3d at p. 1199.) The appellate court agreed, holding as follows:

> "The record shows the trial court's decision to terminate support was not based on any finding of changed circumstances since the original decree, but was predicated on its policy conclusion that no spouse of a dissolved medium-length marriage should be required to indefinitely support a disabled ex-spouse. That is, the trial court assumed that after passage of a reasonable time spousal support for a disabled ex-spouse should be cut off irrespective of whether there has been a change of circumstances, and that needed future support should be borne by available social welfare programs or by other third party sources." (*In re Marriage of Heistermann*, *supra*, at p. 1200.)

In that case, because there was no express termination date in the original support order, the husband was required to carry his burden of showing a change of circumstances justifying termination. (*Id*. at pp. 1201-1202.) The husband could not carry his burden. The wife's cohabitation had been short term and had concluded, and she was unemployed and in need of support. Moreover, the original support order did not direct the wife to become self-supporting:

> "We recognize the courts may properly issue orders encouraging spouses to seek employment and to work toward becoming self-supporting. [Citation.] When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with his/her ability, that factor may be taken into consideration in fixing the amount of support in the first instance or in modification proceedings. [Citation.] However, absent provisions in the original support order

13.

designed to direct the spouse toward becoming self-supporting, an unemployed spouse should not be penalized years later for a failure to become employed. [Citation.] Here, there was no order directing [the wife] into the work force in the original order, and there was no finding in the modification order that [she] had avoided work she was capable of doing. Although it was within the trial court's discretion at the modification proceeding to conclude the work-hardening order was appropriate means to encourage [the wife] to evaluate her capabilities, in the absence of a finding that [she] could reasonably be expected to become self-supporting or the equities have shifted, the court should refrain from setting a termination date and should keep the burden of future modification on the supporting party.

"In sum the focus of the trial court's decision, as reflected in its written statement, was not that [the wife] would no longer need support nor that the equities had shifted based on changed circumstances, but was its erroneous perception that the mere passage of time required it to shift the support obligation from the ex-spouse to society and to terminate its jurisdiction over spousal support." (*In re Marriage of Heistermann*, *supra*, 234 Cal.App.3d at p. 1204.)

Significantly, unlike the trial court in *Heistermann*, the trial court here did not terminate spousal support based on the mere passage of time. It considered the applicable statutory factors and balanced the equities involved. Notably, too, there are several procedural and factual distinctions between this matter and the *Heistermann* case that make its application here inapposite.

We agree with Robert's contention that *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913 is best applied in these circumstances. In *Wilson*, the trial court terminated the wife's spousal support on a future date despite the fact the husband had the ability to continue supporting the wife, and the wife could not support herself because a brain injury she suffered during the marriage rendered her permanently disabled. (*Id.* at p. 916.) In addition to the wife's need and the husband's ability to pay, the court considered the marriage's length (5 years 10 months), that the couple married in their 40's after establishing their own lives, the wife's unemployment during the marriage did not affect her earning capacity, the wife did not contribute to the husband's career, and

14.

the husband paid support for 4 years 10 months. After considering all these circumstances and "balanc[ing] the equities" the court decided "the obligation to assist [the wife] should shift from [the husband] to society." (*Id*. at pp. 917–918.)

The Court of Appeal affirmed, holding the wife's inability to support herself was just one of the statutory factors section 4320 required the trial court to weigh in making its decision. (*In re Marriage of Wilson*, *supra*, 201 Cal.App.3d at pp. 919–920.) As the *Wilson* court explained, "Once the trial court logically and reasonably applies section [4320], all that remains for the appellate court is a review for potential abuse of discretion. Because [the record showed] the trial court carefully weighed all [the statutory] factors, the decision to terminate support including medical coverage was not an abuse of discretion given the totality of circumstances." (*Id.* at p. 920.)

Here, the trial court ordered termination of Robert's spousal support of Veronica as of June 1, 2012; it did not retain jurisdiction on the issue. The record establishes the trial court carefully weighed all the section 4320 factors in making its order. The trial court acknowledged Veronica was unable to support herself and was permanently disabled, while Robert has the ability to continue supporting Veronica. It held that Veronica's unemployment during the marriage was related to her disability, that she did not contribute to Robert's career, and that Robert paid temporary spousal support for the postseparation period commencing March 18, 2009, at $400 per month. The court also considered the needs of each party. Significant here are Robert's needs relative to his status as the custodial parent of Thomas, the couple's minor child. Thomas was born with a rare genetic disorder, NF-1. Those who suffer from the disorder experience developmental delays, a high incidence of hyperactivity, learning disabilities, and cognitive deficits. Additionally, tumors are commonly associated with this disorder and may cause disfigurement or require surgery. There is no known cure.

At the time of trial, Thomas displayed a number of symptoms common among children with NF-1: an enlarged head, skin pigmentation problems, and physical and

developmental delays "several years behind most children his age." While Thomas was not suffering from tumors or significant changes in his eyesight at that time, it was noted that his condition "will almost certainly include more medical procedures [and] counseling to deal with his disfigurements and disabilities." Veronica offered no evidence to the contrary. We do not view Thomas's future needs as speculative, as Veronica would have us do. We find it was proper of the trial court to consider Thomas's circumstances as they directly affect Robert's responsibilities and needs.

Veronica's permanent disability is but one factor the court considered, as is the duration of the parties' marriage. The court's findings are supported by substantial evidence. (*Overton v. Vita-Food Corp.*, *supra*, 94 Cal.App.2d at p. 370.) Further, they are logical and reasonable, and do not amount to an abuse of discretion. (*In re Marriage of Ostler & Smith*, *supra*, 223 Cal.App.3d at p. 50; *In re Marriage of Wilson*, *supra*, 201 Cal.App.3d at p. 920.)

### G.     Age and Health of the Parties

The trial court considered the age and health of Veronica and Robert as required by subdivision (h) of section 4320. Veronica vaguely contends the trial court abused its discretion in this regard.

In its statement of tentative decision, the court determined "[b]oth parties are in their mid-40's. [Veronica] is permanently disabled and unable to be gainfully employed. [Robert] has not indicated he has any health issues."

Veronica's argument is styled as one asserting an abuse of discretion. Yet, in reality, Veronica is asking this court to reweigh the evidence and conclude in her favor. This we cannot, and will not, do. (*Nestle v. City of Santa Monica*, *supra*, 6 Cal.3d at p. 925; *In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443; *Ali v. U.S.A. Cab Ltd*. (2009) 176 Cal.App.4th 1333, 1351-1352.)

## H. Balance of Hardships

Veronica also argues the trial court abused its discretion because her present needs outweigh Thomas's needs as his are "uncertain and, in the absence of evidence at trial to the contrary, are speculative," and because the "true economic conditions" of Robert's income were unknown at the time of trial. She claims "it is evident that economic conditions are improving" for Robert and declining for her.

Subdivision (k) of section 4320 requires the trial court to consider the "balance of the hardships to each party." In its statement of decision, the trial court found that

> "[b]oth parties have significant needs and only limited resources to deal with them. [Veronica] is permanently disabled and requires continual care. [Robert] is the custodial parent of a special needs child that will be facing significant medical issues as he get[s] older."

Yet again, Veronica's argument is really asking us to reweigh the evidence. As explained, our task on review of an alleged abuse of discretion is to determine whether that exercise of discretion was arbitrary, capricious or patently absurd. (*Adoption of D.S.C.*, *supra*, 93 Cal.App.3d at p. 25.) The trial court's determination here is none of those things.

As we have already held, Veronica stipulated to the use of Randall's report for the purposes of a spousal support determination. She cannot now claim error on appeal for the trial court's use of those figures. (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 403; *In re Marriage of Hinman*, *supra*, 55 Cal.App.4th at pp. 1001-1002; *Mesecher v. County of San Diego*, *supra*, 9 Cal.App.4th at p. 1686*; In re Marriage of Maxfield*, *supra*, 142 Cal.App.3d at p. 759.)

Further, we have also determined Thomas's future needs are not speculative. There is substantial evidence in the record to support a finding that Thomas's condition will require future medical intervention in the form of surgical procedures and counseling, as well as any needs arising out of his developmental delays. (*Overton v. Vita-Food Corp.*, *supra*, 94 Cal.App.2d at p. 370.)

17.

Moreover, Veronica receives support in the form of a lifetime annuity and Social Security benefits in the sum of $3,100 per month.  On balance, the trial court's determination is neither arbitrary nor capricious.

## I.        Conclusion

Following a careful and thorough review of the record on appeal, we find the trial court's determination regarding spousal support, including its application and analyses of the section 4320 factors, is supported by substantial evidence.  Further, its determination regarding termination of spousal support is neither arbitrary and capricious nor patently absurd.  Therefore, the trial court did not abuse its broad discretion.  (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479-480.)

## III.      Marital Property

Finally, Veronica contends the trial court erred when it ordered her to reimburse Robert for repairs made to the roof of the family residence.  We find no error.

### A.        The Trial Court's Findings

In its statement of tentative decision issued May 25, 2012, the trial court found as follows:

> "After the date of separation, [Robert] made repairs to the roof of the family residence and seeks reimbursement for his contribution of $16,685 in separate property funds.  As a general rule, the court must order reimbursement out of the community property on dissolution to a spouse who, after separation of the parties, uses earning[s] or other separate funds to pay preexisting community obligations of the community property.  In re Marriage of Epstein (1979) 24 Cal.3d 76, 84-85 (husband may claim reimbursement for sums expended after separation to preserve and maintain the family residence, unless such sums were paid to fulfill husband's support obligations).  [Veronica] argues that [Robert]'s right to reimbursement does not exist where the asset which was improved has no value.

> "The controlling authority is Reilley v. Reilley (1987) 196 Cal.App.3d 1119, 1124.  In Reilley the appellate court held that, 'where a spouse has unilaterally decided to improve community property in a post-separation setting,' the spouse is entitled to reimbursement for the

18.

expenditure of separate property funds 'only to the extent it can be demonstrated the expenditure increased the fair market value of the property. [Citation.]' (Id., at p. 1124.) However, the Reilley court recognized that '[f]actors may exist … which, in equity, will justify reimbursement of the separate contribution in an amount which discounts a pure benefit approach. The evidence may disclose, for example, that the parties agreed that the improvement be made, or the improvement may have been necessary to preserve the asset.' (Ibid.) The Reilley court left 'consideration of such [factors] and their effect to the discretion of the trial court. [Citation.]' (Ibid.)

"Here, the repairs to the roof clearly were necessary to preserve the family residence, a community asset. While that asset may have no current value, the court must also consider [Robert]'s fiduciary duty to maintain the family residence pursuant to … section 721. Additionally, [Robert] was residing in the family home with the couple's child, Thomas, and, given [Veronica]'s condition, was obligated to be the primary caregiver for Thomas. These equitable considerations lead the court to conclude [Robert] is entitled to be reimbursed by the community for his contribution to the maintenance of the family home."

**B.      Analysis**

Veronica's argument lacks merit. It is well settled that a spouse may claim reimbursement for amounts spent after separation on preexisting community obligations. (*In re Marriage of Epstein*, *supra*, 24 Cal.3d at pp. 82-84, superseded by statute on other grounds as stated in *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1280.) Such reimbursement amounts generally are referred to as *Epstein* credits. Whether to award *Epstein* credits and in what amount is left to the trial court's discretion. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272.)

In *In re Marriage of Reilley*, *supra*, 196 Cal.App.3d 1119, the husband sought reimbursement of costs related to his remodel of a community property asset after the parties separated. More specifically, the husband added two bedrooms, a bathroom, and a deck to the parties' second home—largely for the benefit of the children when they visited—a home he resided in following separation. The husband testified he advised the wife and she did not object; the wife testified she was informed of the remodel but there

was no discussion about the matter or whether the community would reimburse the husband for the remodel. (*Id*. at p. 1121.) The trial court ordered the husband be fully reimbursed; the wife appealed. (*Id*. at p. 1122.) The appellate court agreed with the wife that while reimbursement was proper, the amount awarded to the husband was not because the property value was not increased at all, or only slightly, by the improvements made. (*Id*. at pp. 1123-1124.) That court cautioned an increase in value was not the only factor to be considered. Other factors may exist that would "justify reimbursement of the separate contribution in an amount which discounts a pure benefit approach," including the fact "the improvement may have been necessary to preserve the asset. We leave consideration of such factors and their effect to the discretion of the trial court. [Citation.]" (*Id*. at p. 1124.)

Here, while the family home may have a negative equity given the real estate market, that fact alone does not preclude reimbursement. In December 2006, Robert paid $16,685 to repair the roof at the family residence in Bakersfield.[4] The house was older and the roof developed leaks that caused structural damage, necessitating its replacement. Had the repairs not been made, structural damage would have worsened and further lessened the value of the home, rendering it not marketable. Hence, the repairs were necessary to preserve the home as a community asset. (*In re Marriage of Reilley*, *supra*, 196 Cal.App.3d at p. 1124.) That necessity discounts the pure benefit approach. (*Ibid*.)

Furthermore, as argued by Robert and acknowledged by the trial court, Robert was obliged to maintain the home, a community property asset. Each spouse has a duty to act in accordance with the general rules governing fiduciary relationships in the management

---

[4]In March 2012, in anticipation of trial, Robert declared the property was purchased in 2002 for $210,000. Prior to the collapse of the real estate market, the home's value increased to approximately $300,000. However, after the market's collapse, the home's value decreased significantly. Robert opined its present value "assuming certain funds are spent getting the property ready for sale [carpet, paint, pool resurfacing]" is about $180,000. Approximately $153,000 remains outstanding on the promissory notes secured by the first and second deeds of trust.

and control of the community's assets until those assets are divided by the court. (§§ 721, 1100.)

We find Robert's replacement of the roof on the family residence was necessary in light of its condition and was required in light of his related fiduciary duty. As a result, it was entirely reasonable for the court to reimburse Robert the cost of the roof replacement where Robert expended separate funds for the benefit of a community property asset prior to disposition. Thus, the trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Robert.

_____
PEÑA, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
LAPORTE, J.*

---

*Judge of the Kings Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21.