T.C. Memo. 2017-208

UNITED STATES TAX COURT

OPAL CASSANDRA SHARP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10751-16.                    Filed October 23, 2017.

Opal Cassandra Sharp, pro se.

<u>Mark A. Nelson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of $7,337 in peti-

tioner's Federal income tax (tax) for her taxable year 2014.

The issues for decision for petitioner's taxable year 2014 are:

**[*2]** (1) Is petitioner entitled to a dependency exemption deduction under section 151(a)[1] for each of MLS and MSS?  We hold that she is not.

(2) Is petitioner entitled to the child tax credit under section 24(a) with respect to each of MLS and MSS?  We hold that she is not.

(3) Is petitioner entitled to the earned income tax credit under section 32(a) with respect to each of MLS and MSS?  We hold that she is not.

(4) Is petitioner entitled to head of household filing status under section 2(b)?  We hold that she is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in California at the time she filed the petition.

As of the time of trial, petitioner had been residing with Walter Griffin (Mr. Griffin) for approximately 20 years.  Petitioner and Mr. Griffin never married.  During at least 2014, petitioner owned the residence in which she and Mr. Griffin lived and had an outstanding loan secured by a mortgage on that residence (mortgage loan).

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**  Petitioner was unemployed during January and February 2014 because her employer of 28 years had discharged her and certain other employees in connection with its commencing a bankruptcy proceeding.  Petitioner was unable to find other work until March 2014.  As a result, the wages that petitioner received during 2014 totaled only $28,064.  She also received during that year so-called RTAA (i.e., Reemployment Trade Adjustment Assistance) payments totaling $1,700.  Petitioner did not have any other income for her taxable year 2014.

Because her employment had been terminated when her employer of 28 years commenced a bankruptcy proceeding, petitioner was unable during 2014 to make all of the required monthly payments on her mortgage loan and began to receive assistance from the California Housing Finance Agency Mortgage Assistance Corporation.  During January through October 2014, that corporation made the required monthly payments on petitioner's mortgage loan that totaled $15,338.95.

Mr. Griffin is the biological father of Kadumu Pamoja Griffin (Kadumu Griffin).  Kadumu Griffin and Latasha S. Humphrey (Ms. Humphrey) are the biological parents of MLS and MSS.  Mr. Griffin is the biological grandfather of MLS and MSS (sometimes collectively, children).  Petitioner is not biologically related to Ms. Humphrey, Kadumu Griffin, MLS, or MSS.

**[*4]** On July 16, 2013, Ms. Humphrey signed a document titled "Temporary Guardianship Agreement" (temporary guardianship document). Petitioner and Mr. Griffin did not sign that document. The temporary guardianship document was a preprinted form on which Ms. Humphrey had supplied certain information reflecting her desires with respect to the temporary custody of her children. According to the temporary guardianship document, Ms. Humphrey granted "temporary custody" of MLS and MSS to petitioner and Mr. Griffin for the period July 16, 2013, to July 16, 2014. At the time Ms. Humphrey signed the temporary guardianship document, there was an understanding between (1) Ms. Humphrey and (2) petitioner and Mr. Griffin that the children were to live temporarily with petitioner and Mr. Griffin during the period indicated in that document, which was to end on July 16, 2014, when they were to return to live with Ms. Humphrey.

No agency authorized to place children for adoption or for foster care by the State of California or by the governing body of a city, town, or other municipality in California approved or had any other role in Ms. Humphrey's granting temporary custody of her children to petitioner and Mr. Griffin pursuant to the understanding that they had when Ms. Humphrey signed the temporary guardianship document. Moreover, at no time during 2014 were the children placed in petitioner's custody as foster children.

**[*5]**  Although Ms. Humphrey did not indicate in the temporary guardianship document that MSS and MLS were to return to live with her before July 16, 2014, she asked petitioner and Mr. Griffin to return the children to her before that date. That was because Ms. Humphrey believed that she was ready to take care of them. Pursuant to Ms. Humphrey's request, on September 16, 2013, MSS and MLS returned to live with her.  Within two days Ms. Humphrey changed her mind and concluded that she was not ready to take care of her children.  On September 18, 2013, they returned to live with petitioner and Mr. Griffin.

Although Ms. Humphrey indicated in the temporary guardianship document that MLS and MSS were to return to live with her on July 16, 2014, those children did not return to live with her until August 18, 2014.  A few months later in October 2014 MLS returned to live with petitioner and Mr. Griffin.  That was because MLS was having certain behavioral problems at school that Ms. Humphrey had concluded she was not able to handle.

At the time in October 2014 that MLS returned to live with petitioner and Mr. Griffin, there was no understanding between them and Ms. Humphrey regarding how long MLS was to live with them.  However, Ms. Humphrey and petitioner and Mr. Griffin did have an understanding at that time that MLS' return to them in October 2014 was a temporary arrangement that was to last only until they had

**[\*6]** provided MLS with the help and guidance that MLS needed to resolve MLS' behavioral problems. In this connection, petitioner and Mr. Griffin had at an earlier time contemplated seeking permanent legal custody of MLS and MSS. However, they decided that it would be in the best interests of the children if they were reunited with and lived with their mother, Ms. Humphrey, after she was stable and was able to care for them.

While MLS and MSS were living with petitioner and Mr. Griffin during 2014, petitioner paid $1,148 for certain after-school care. During that period, petitioner also purchased for the children certain clothes costing at least $622.81, certain shoes costing at least $32.69, certain school photographs costing $98, and certain materials for a school project costing $34.93. While MLS and MSS were living with petitioner and Mr. Griffin during 2014, petitioner also paid for certain karate classes costing $105, a whale-watching tour costing $150, and occasional trips to McDonald's.

During 2014, petitioner paid certain monthly homeowners association fees of $189 and certain gas bills and internet-access bills in amounts not established by the record.

**[\*7]** During 2014, Mr. Griffin, who was self-employed, paid all of the electric bills for the house in which he and petitioner resided.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for her taxable year 2014 (2014 return). In that return, petitioner reported total income of $29,764 and claimed (1) head of household filing status, (2) a dependency exemption deduction for each of MLS and MSS,[2] and (3) with respect to each of MLS and MSS the child tax credit and the earned income tax credit.

In the tax return that Ms. Humphrey filed for her taxable year 2014, she claimed a dependency exemption deduction for each of MLS and MSS.

Respondent issued a notice of deficiency (notice) to petitioner with respect to her taxable year 2014. In that notice, respondent determined to disallow the dependency exemption deduction for each of MLS and MSS that petitioner had claimed in her 2014 return. Respondent also determined to disallow with respect to each of MLS and MSS the child tax credit and the earned income tax credit that petitioner had claimed in that return. Respondent further determined to disallow petitioner's claimed head-of-household filing status.

---

[2]In her 2014 return, petitioner claimed that the relationship to her of each of MLS and MSS was "grandchild".

**[\*8]**                                        OPINION

Petitioner bears the burden of establishing that the determinations in the notice are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Dependency Exemption Deduction

Section 151(c) provides an exemption for each dependent of the taxpayer as defined in section 152.  Section 152(a) defines the term "dependent" to include a qualifying child, see sec. 152(a)(1), or a qualifying relative, see sec. 152(a)(2).

Section 152(c) defines the term "qualifying child" as follows:

SEC. 152.  DEPENDENT DEFINED.

(c) Qualifying Child.--For purposes of this section--

(1) In general.--The term "qualifying child" means, with respect to any taxpayer for any taxable year, an individual--

(A) who bears a relationship to the taxpayer described in paragraph (2),

(B) who has the same principal place of abode as the taxpayer for more than one-half of such taxable year,

(C) who meets the age requirements of paragraph (3),

(D) who has not provided over one-half of such individual's own support for the calendar year in which the taxable year of the taxpayer begins, and

**[*9]**         (E) who has not filed a joint return (other than only for a claim of refund) with the individual's spouse under section 6013 for the taxable year beginning in the calendar year in which the taxable year of the taxpayer begins.

As pertinent here, for purposes of section 152(c)(1)(C) an individual meets the age requirements if that individual is under age 19. See sec. 152(c)(3)(A)(i).

As pertinent here, section 152(c)(2) provides that a person bears a relationship to the taxpayer for purposes of section 152(c)(1)(A) "if such individual is-- (A) a child of the taxpayer or a descendant of such a child, or (B) a brother, sister, stepbrother, or stepsister of the taxpayer or a descendant of any such relative."

As pertinent here, section 152(f)(1) defines the term "child" for purposes of section 152 to mean either a "son, daughter, stepson, or stepdaughter of the taxpayer", sec. 152(f)(1)(A)(i), or "an eligible foster child of the taxpayer", sec. 152(f)(1)(A)(ii). Section 152(f)(1)(C) defines the term "eligible foster child" for purposes of section 152(f)(1)(A)(ii) to mean "an individual who is placed with the taxpayer by an authorized placement agency or by judgment, decree, or other order of any court of competent jurisdiction."

It is petitioner's position that she is entitled for her taxable year 2014 to a dependency exemption deduction under section 151(a) for each of MLS and MSS. In support of her position, petitioner advances the following argument on brief:

**[*10]** "I am relying on the facts that I had a Temporary Custody Agreement in place, the children lived in my residence longer than six months, and I provided more than half of the children's support for the 2014 taxable year. These facts prove I rated [sic] to claim the children and file head of household on my 2014 income tax return."

It appears from the above-quoted argument of petitioner that she believes that for her taxable year 2014 each of MLS and MSS is a qualifying child as defined in section 152(c) with respect to her. Assuming arguendo that we were to accept all of the factual contentions on which petitioner relies in advancing her argument in support of her position that for her taxable year 2014 she is entitled to a dependency exemption deduction for each of MLS and MSS, that argument does not address whether each of MLS and MSS satisfies the part of the definition of the term "qualifying child" that is set forth in section 152(c)(1)(A), namely, whether for petitioner's taxable year 2014 each of the children bore a relationship to her that is described in section 152(c)(2). See sec. 152(c)(1)(A).

The record establishes, and respondent points out on brief, that during 2014 neither MLS nor MSS was by blood or by adoption (1) a child of petitioner or a descendant of a child of petitioner or (2) a brother, sister, stepbrother, or stepsister of hers or a descendant of any such relative. See sec. 152(c)(2). The record also

[*11] establishes, and respondent also points out on brief, that during 2014 neither MLS nor MSS was a "stepson, or stepdaughter", sec. 152(f)(1)(A)(i), or "an eligible foster child", sec. 152(f)(1)(A)(ii), of petitioner.

Although it is not altogether clear, it appears that petitioner believes that for her taxable year 2014 each of MLS and MSS was a "descendant * * * of a child" of hers within the meaning of section 152(c)(2)(A). In order to hold that belief, petitioner must think that, because in 2014 she had lived with Mr. Griffin for approximately 17 years, he was her common law husband during that year. Consequently, as we understand petitioner's reasoning, Kadumu Griffin, Mr. Griffin's son, was her stepson during 2014 and each of MLS and MSS was a descendant of that stepson during that year, thereby satisfying the relationship requirement in section 152(c)(1)(A) and (2) with respect to each of those children for her taxable year 2014.

The premise of what we understand to be petitioner's belief regarding her relationship to each of MLS and MSS during 2014, namely, that Mr. Griffin was her common law husband during that year, is wrong. Consequently, her reasoning as to why for her taxable year 2014 she has the relationship to each of MLS and MSS that section 152(c)(1)(A) and (2) requires is flawed. The State of California

**[\*12]** does not recognize common law marriages between its own domiciliaries.[3]

See, e.g., Norman v. Norman, 54 P. 143, 145-146 (Cal. 1898); Estate of Edgett, 168 Cal. Rptr. 686 (Ct. App. 1980). A relationship based upon mere cohabitation is not recognized as a marriage in the State of California. See, e.g., Elden v. Sheldon, 758 P.2d 582, 586-587 (Cal. 1988).

On the record before us, we find that Kadumu Griffin was not petitioner's stepson during her taxable year 2014. On that record, we further find that neither MLS nor MSS was a descendant of a stepson (or other child) of petitioner during that taxable year. On the record before us, we find that for petitioner's taxable year 2014 neither MLS nor MSS is a qualifying child as defined in section 152(c)(1) with respect to her and that therefore neither is her dependent as defined in section 152(a)(1).[4]

---

[3]The State of California does, however, recognize common law marriages validly created in other States that allow such marriages. See, e.g., Etienne v. DKM Enters., Inc., 186 Cal. Rptr. 321, 322-323 (Ct. App. 1982). We do not understand petitioner to be taking the position, and the record does not establish, that she and Mr. Griffin have a validly executed common law marriage in a State other than California.

[4]We do not understand petitioner to be taking the position that each of MLS and MSS is a dependent described in sec. 152(a)(2) because each is a qualifying relative as defined in sec. 152(d). Assuming arguendo that she had advanced that position, on the record before us, we would reject it. On that record, we would find that petitioner has failed to carry her burden of establishing, inter alia, that for

(continued...)

[*13] Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that for her taxable year 2014 she is entitled under section 151(a) to a dependency exemption deduction for each of MLS and MSS.

Child Tax Credit

Section 24(a) provides a credit with respect to each qualifying child of the taxpayer. As pertinent here, section 24(c)(1) defines the term "qualifying child" as "a qualifying child of the taxpayer (as defined in section 152(c)) who has not attained age 17."[5]

It is petitioner's position that she is entitled for her taxable year 2014 to the child tax credit under section 24(a) for each of MLS and MSS.

We have found that for petitioner's taxable year 2014 neither MLS nor MSS is a qualifying child as defined in section 152(c)(1) with respect to her.

---

[4](...continued)
2014 each of MLS and MSS had the same principal abode as petitioner. See sec. 152(d)(1)(A), (2)(H); sec. 1.152-1(b), Income Tax Regs.

[5]The parties agree that at all relevant times each of MLS and MSS was under 17 years old.

[*14] On the record before us, we find that for petitioner's taxable year 2014 neither MLS nor MSS is a qualifying child as defined in section 24(c) with respect to her.

Based upon our examination of the entire record before us, we find that for her taxable year 2014 petitioner is not entitled to the child tax credit under section 24(a) with respect to each of MLS and MSS.

Earned Income Tax Credit

Section 32(a)(1) permits an eligible individual an earned income credit against that individual's tax liability.[6] As pertinent here, the term "eligible individual" is defined to mean "any individual who has a qualifying child for the taxable year". Sec. 32(c)(1)(A)(i). As pertinent here, section 32(c)(3)(A) defines the term "qualifying child" to mean "a qualifying child of the taxpayer (as defined in section 152(c) * * *)."

It is petitioner's position that she is entitled for her taxable year 2014 to the earned income tax credit under section 32(a) with respect to each of MLS and MSS.

---

[6]The amount of the credit is determined on the basis of percentages that vary depending on whether the taxpayer has one qualifying child, two or more qualifying children, or no qualifying children. See sec. 32(a)(2) and (b)(1) and (2).

**[\*15]** We have found that for petitioner's taxable year 2014 neither MLS nor MSS is a qualifying child as defined in section 152(c)(1) with respect to her.

On the record before us, we find that for petitioner's taxable year 2014 neither MLS nor MSS is a qualifying child as defined in section 32(c)(3)(A) with respect to her.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that for her taxable year 2014 she is entitled to the earned income tax credit under section 32(c)(3)(A) with respect to each of MLS and MSS.

<u>Head of Household Filing Status</u>

Section 1(b) provides a special tax rate for an individual who qualifies as a head of household. As pertinent here, section 2(b)(1) provides that an unmarried individual "shall be considered a head of a household" if that individual "maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode" of "a qualifying child of the individual (as defined in section 152(c) * * *)", sec. 2(b)(1)(A)(i), or "any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151," sec. 2(b)(1)(A)(ii).

**[\*16]** It is petitioner's position that she is entitled for her taxable year 2014 to head of household filing status under section 2(b).

We have found that petitioner has failed to carry her burden of establishing that for her taxable year 2014 each of MLS and MSS is a qualifying child as defined in section 152(c) with respect to her. We have also found that petitioner has failed to carry her burden of establishing that for her taxable year 2014 she is entitled under section 151(a) to a dependency exemption deduction for each of MLS and MSS.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that for her taxable year 2014 she is entitled to head of household filing status under section 2(b).

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered for respondent.